## Carter Coal Company v. Clouse.

(Decided March 4, 1915.)

### Appeal from Knox Circuit Court.

1. Judgment—Personal Injuries—Parties—Defenses.—In an action for personal injuries, where the defendant was a party to the record, and confined its defense to an effort to show that it was a separate entity from the real party responsible, and did nothing to deceive the plaintiff or hinder him in the prosecution of his claim against the real party responsible, and defended on the merits only in so far as they affected it, it does not come within the rule which makes a judgment binding on one though not a party to the record, if he takes charge of the defense and pays the expense of the nominal defendant to the action.

2. Corporations—Liability of One Corporation for Debts of Another.—The fact that one person holds stock in three companies is not proof that they are the same company, or that either is liable for the debts of the other.

3.  Corporations—Merger—Liabilities—Liens.—Where one corporation transfers all its assets to another without having paid its debts, or where one corporation goes out of existence by being merged into another, the liabilities of the old corporation are enforcible against the new one, and equity impresses a lien against the property thus taken over for the benefit of the creditors of the old concern, but before a creditor can maintain an action against the new corporation, it must reduce its claim to judgment against the old one.

4.  Corporations—Non-resident Corporation—Suit Against—Process— Judgment can not be taken against a non-resident corporation by suing in Kentucky, and serving process on the agent of a Kentucky corporation, although the corporation in Kentucky purchased and was then operating the property in another State where the claim arose.

5.  Evidence—Stenographers—Impeachment of Certificate of Judge.— The certificate of a stenographer to the transcript of evidence can not be permitted to impeach the certificate of the judge, even if it tended to show a contrary state of facts.

6.  Appeal—Use of Stenographic Transcript on—Attestation.—Section 4644 authorizes the use of a stenographic transcript on appeal, "when attested by the judge before whom the trial was had."

7.  Trial—Bill of Exceptions—Extension of Time for Filing.—Under Sub-section 2 of Section 337 of the Code, as amended by the Act of 1878, the party excepting may at any time during the term at which the judgment becomes final request an extension of time to a day in the succeeding term in which to prepare and file bill of exceptions.

BLACK, BLACK & OWENS for appellant.

R. S. ROSE for appellee.

Opinion of the Court by Judge Nunn—Reversing.

The appellee, Gibson Clouse, is a coal miner, and while employed by the Virginia-Pocahontas Coal Company, and working in its Yukon mine near Welch, in the State of West Virginia, was severely injured through the negligence of his employer. Slate fell upon him injuring his backbone so that he is paralyzed from his hips down and his bowels and kidneys do not properly function.

He brought a suit in this State in the Pike Circuit Court against the Virginia-Pocahontas Coal Company, incorporated in Virginia; the Interstate Coal Company, incorporated in North Carolina; and the Carter Coal Company, incorporated in Delaware. It was a suit against these defendants jointly seeking to recover $3,000 for the injury. By an amended petition prayer for damages

was raised to $30,000, but for some reason the court, in instructing the jury, limited a recovery to $3,000, and that was the amount of their verdict in favor of appellee.

The reason for joining the three defendants was, as stated in the petition, that they were one and the same company, and, in effect, an employe working in a mine ostensibly operated by one company was, in fact, an employe of all the companies, or rather the same company, wherever the work may be.

Process was served in Pike County on W. R. Marsee, as the agent of the three companies. Before the trial the court, on motion, quashed the service as to the Virginia-Pocahontas Coal Company, and at the conclusion of all the evidence directed a verdict in favor of the Interstate Coal Company, so that the question of liability was submitted to the jury only in so far as it affected the Carter Coal Company, and its liability is the prime question on appeal. There is no cross-appeal as to the rulings with reference to the Virginia and Interstate Company.

There is no controversy about the nature and extent of the appellee's injury, nor as to the liability of his employer therefor. The Carter Coal Company maintains that it was not his employer; that it was not responsible for the mining operations at Welch, and had no connection with the Virginia-Pocahontas Coal Company; in fact, it says that it, the Carter Company, did not then have an existence.

In the first place, we may say that we see no room for application of the rule laid down in the case of Schmidt v. L. C. & L. Ry. Co., 99 Ky., 143, which makes a judgment binding on one, not a party to the record, if he takes charge of the defense and pays the expense of the nominal defendant to the suit. The appellant here was a party to the record, and regularly brought before the court. The Virginia-Pocahontas Company appeared only to quash the service, and, from the proof, the court adjudged that the Interstate Company was not liable for the damages. There is nothing in the case to show that the Carter Company by its defense did anything to deceive the appellee or to hinder him in the prosecution of his claim for damages against the real party responsible. While the appellant defended on the merits, yet it was only in so far as the merits affected it. The defense

was in its own name and confined to an effort to show that it was a separate entity wholly distinct from the Virginia Company, and, therefore, not liable for any obligation of the Virginia Company. On cross-examination of the appellee, Clouse, counsel for appellant did ask some questions as to the severity of the injury, and about some details as to how it occurred, but his answers were accepted as true, and no effort was made to impeach or contradict him. Consequently, we are unable to say that the appellant by anything occurring at the trial or in its defense is estopped to disclaim liability.

In September and October, 1911, the appellee worked for the Interstate Coal Company in Pike County. At or about the close of that year he went to West Virginia and began work for the Virginia-Pocahontas Company at its Yukon mine, near Welch, and continued the work there until June 3rd, 1912, when the accident occurred.

In December, 1912, the Carter Coal Company was incorporated, and in January, 1913, it purchased of the Pocahontas Company some 15,000 or 17,000 acres near Welch, West Virginia, including the Yukon mine. It also purchased about the same time the Warren mine of the Interstate Company in Pike County, Kentucky, and has operated the two mines since that time, but the proof is ample and uncontradicted that the Virginia and Interstate Companies are still going concerns; they were not merged into or absorbed by the Carter Company; they have their own properties and sufficient assets to satisfy all liabilities. While the proof does not show the consideration which the Carter Company paid for the properties in question, no attack is made upon the good faith of the transfers. The Virginia Company has nine stockholders; the Interstate Company four; and the Carter Company five. George L. Carter was a stockholder in all three, and S. R. Jennings in two of them. No one of the other stockholders is a stockholder in either of the other two companies. In our opinion there is no proof to show that the companies were one and the same, and it abundantly sustains appellant's position that it was a separate and distinct entity, not in existence at the time of the injury, and that its creation and subsequent purchase of part of the holdings of the other two companies was not even incidental to the injury. The fact that George L. Carter held stock in each of the three companies is not proof that they were the same company

or that either was liable for the debts of the other. C. & O. S. W. R. R. Co. v. Griest, 85 Ky., 619.

Appellee relies upon three other circumstances to support his theory, but, in our opinion, the circumstances do not raise a question of fact and throw no light on the inquiry. The first circumstance relates to the time when he worked for the Interstate Company; that is, in September and October, 1911. He says that the pay envelope containing his September wages had printed upon it the name of the Virginia-Pocahontas Coal Company. He said that he retained the envelope and kept it in his trunk but the rats destroyed it. Later on in the trial he introduced his September and October pay slips—he does not say where he had kept them—but they show the state of his account with the Interstate Company for each month; that is, the amount of coal mined and credits for goods received from the store. Neither of them is in the name of the Virginia-Pocahontas Coal Company, and each shows that appellee Clouse signed his name by mark. The circumstance of the pay envelope could only affect the Interstate Coal Company, and it would hardly be sufficient to fix liability, even if the testimony as to the printing on the envelope which contained the pay slip was not discredited by the fact that the witness, who testifies as to how it read, shows that he could not read.

The other circumstance is a statement by appellee that when he went to work for the Virginia-Pocahontas Company in West Virginia, he told the mine foreman he had been working with the Interstate Company in Kentucky, and when he told the foreman the name of the superintendent of the Interstate mine, the foreman replied, "They are about the same," and the appellee said, "I suppose so, I don't know." The foreman then said, "You can have the job." This testimony, too, if it could have any effect, could only affect the Interstate Company.

Appellee also testifies that he saw George L. Carter at one time at the Interstate mine in Kentucky, and at another time at the Pocahontas mine in West Virginia. His counsel then asked him, "Please state whether or not he exercised the same control at Pocahontas mines as at the Interstate mine." Witness answered, "Yes, sir; I know that." But in answer to a question just before that he stated he did not know whether Carter exercised any control.

The doctrine is well settled that where one corporation transfers all its assets to another corporation, and practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. The same rule applies where one corporation goes out of existence by being merged into or absorbed by another. In such cases the liabilities of the old corporation are enforcible against the new one. In other words, equity impresses a lien on the property thus taken over by the new corporation for the benefit of the creditors of the old concern. L. & N. R. R. Co. v. Biddle, 112 Ky., 494; Harbison-Walker Refractories Co. v. McFarland's Admr., 156 Ky., 44; Williams v. Commercial National Bank, 11 L. R. A. (N. S.), 857; 10 Cyc., 1267.

But in the case at bar the old company did not cease to exist; it merely sold a part of its property, and, from the testimony of appellee's witnesses, it appears that the old company had ample property to pay all its debts and continued as a going concern. The appellee, before he can maintain an action against the Carter Company, in any event, would first be compelled to reduce his claim to judgment against the old company. C., O. & S. W. R. R. v. Griest, 85 Ky., 619; L. & N. v. Biddle, 112 Ky., 494; Camden Interstate Railway v. Lee, 27 Ky. L. R., 75; Harbison-Walker Refractories Co. v. McFarland's Admr., 156 Ky., 44. He cannot get judgment against a non-resident corporation by suing in Kentucky and serving process on the agent of a Kentucky corporation, although the corporation in Kentucky had purchased and was then operating in another State the property where the claim arose.

Having reached the conclusion that there is no evidence to sustain the judgment against the Carter Coal Company, we are met by appellee's motion to strike the transcript of evidence from the record. If that motion prevails, then the judgment must be sustained, because, as appellee contends, the judgment is supported by the pleadings. The motion to strike grows out of the following circumstances. The verdict was returned at the January term, 1914. Within three days motion and grounds for new trial were filed and overruled. Several days later, but during the same term, appellant asked and obtained leave to file the bill of exceptions and transcript

of the evidence on a given day at the next term. At the next term, and before the day fixed, the orders of the court show that the bill of exceptions and transcript were filed and that the court took time to consider them. At a later day of that term the orders show they were examined, approved, signed, and filed.

Appellee calls attention to the fact that the certificate of the stenographer at the back of the transcript bears a date later than the order of tender, and later than the day fixed, and argues that it is conclusive proof that the transcript was not in existence on the day of the court order showing tender. In other words, appellee argues that the statement of the court order showing the transcript was tendered is untrue, and we are asked to impeach it by the stenographer's certificate. But the certificate of the stenographer cannot be permitted to impeach the certificate of the judge, even if it tended to show a contrary state of facts. We believe, however, appellee misapprehends the purport of the stenographer's certificate. If it be necessary for the stenographer to certify the transcript at all, it was not necessary to do so on the day it was tendered. It was offered in court to the judge for his examination, and when it is approved by him the requirements of the code are complied with. It is evident that the stenographer certified the transcript while it was in the hands of the court. It makes no difference that it was not so certified when tendered. The lower court may require the certificate, but it adds nothing to its verity on appeal.

Section 4644 of the statutes authorizes the use of a stenographic transcript on appeal "when attested by the judge before whom the trial was had."

Appellee next says that the court could not extend the time over to the next term for filing bill of exceptions, unless request therefor was made at the time the motion for a new trial was overruled; that is, at the time exceptions were taken. It is contended that the court was without jurisdiction to grant an extension because the request was made at a later day of the same term of court.

Section 334 of the Civil Code is as follows:

"The party objecting must except when the decision is made; and time may be given to prepare a bill of exceptions, but not beyond a day in the succeeding term, to be fixed by the court."

Years ago that section was construed to mean that time may be given to reduce the exceptions to writing, but the request must be made at the time the exceptions are taken, and the records of that term must show that the exceptions were taken at the time the decision was made, and that time was then given to reduce the exceptions to writing; that is, to make out a bill of exceptions. Vandever v. Griffith, 2 Met., 425.

In discussing the effect of Section 364, the court, in Scott v. Burrows, 13 Bush, 450, says:

"In practice it was not regarded as absolutely essential, under this section, to ask time to reduce the exceptions to writing at the very moment of the decision; and the practice of preparing the exception, or of asking time until the next term at any time during the term at which the decision was made was tolerated and impliedly approved."

After referring to Sub-section 2 of Section 337, the opinion continues in disapproval of the practice:

"It is manifest from the language used that the intention was to require the party complaining either to proceed at once, upon the overruling of his motion for a new trial, to reduce his exceptions to writing, or else then to ask and obtain the necessary extension of time."

In order to permit the practice which the court in Scott v. Burrows held to be irregular—that is, the practice of making request at any time during the trial term for a day in the next term to present bill of exceptions— the Legislature amended Sub-section 2 so that, with the amendment shown in brackets, the section now reads as follows:

"Exceptions taken during the trial need not be noted of record nor reduced to writing, unless by order of court, until after the trial. (During the term at which the judgment becomes final) the party excepting shall, unless further time be given him, prepare his bill of exceptions, which shall include all the decisions of the court excepted to, in consecutive order; and, if he except to a decision of the court in granting or refusing any instruction, all the instructions given and refused shall be also included. (Words in brackets inserted by Act 1878.)"

But appellee cites the case of Combs v. Combs, 19 Ky. L. R., 439, as authority for his contention that the amendment of 1878, while permitting bill of exceptions

to be filed any time during the trial term, did not permit an extension until the next term, unless the grant was made at the time the motion for a new trial was overruled. In that case the court was considering the regularity of a bill of exceptions filed under the following circumstances: The trial was had at the March term, and on the day the motion for a new trial was overruled, the appellant was given until the third day of the next term to file bill of exceptions. On that day extension was granted to another day of the term, and when that day came, extension was granted until the second day of still another term. The court held that while the amendment of 1878 changed Sub-section 2 of Section 337 of the code "So as to permit a bill of exceptions to be prepared and tendered during the term at which the judgment becomes final, no change, however, is made by that amendment in relation to extension of time beyond the conclusion of the succeeding term." In other words, the court merely held that this amendment did not give the court any power to fix a day beyond the term immediately succeeding the trial term in which a bill of exceptions might be filed. If the bill of exceptions may be filed at any day of the trial term, and that right is not now an open question, in view of the 1878 amendment of the code, then we see no reason why the appellant, if he discovers during the trial term that the exceptions or the transcript cannot be completed in time for filing at that term, may not then ask time for a day in the succeeding term. This is the practice followed by appellant in this case, and, in our opinion, any other rule would work serious hardships. Under the practice today, where the evidence is taken down in shorthand by a reporter appointed by the court, and where this reporter acts during the whole term; has taken the evidence in the cases tried before the one in hand; and must be ready to take the evidence in those to follow, the litigants may consider themselves very fortunate if the stenographer can find time during the term to make a transcript. The appellant has not lost his rights, if he fails to request an extension on the day the decision is rendered. As stated in the case of Blue Grass Traction Co. v. Crossdale, 143 Ky., 200:

"In other cases the same rule has been announced so that it may be said that the principle is well settled in this court that, unless time within which to tender and file a bill of exceptions is given by an order *at the*

*term* at which the motion and ground for a new trial are overruled, the bill cannot thereafter be filed."

Believing that the transcript and bill of exceptions have been regularly filed and authenticated, and believing further that from them it does not appear that there is any evidence to support a judgment against the Carter Coal Company, the judgment is reversed.