## Kentucky Distilleries & Warehouse Company v. Webb's Executor.

(Decided June 11, 1918.)

### Appeal from Fayette Circuit Court.

1. Corporations—Purchase and Sale of Property by.—A corporation has the same right to sell its property as a natural person has, and the purchaser of the property of a corporation occupies towards the creditors of the selling corporation, the same attitude as the purchaser from an individual would occupy towards the creditors of the individual.

2. Corporations—When Purchasing Corporation Liable for Debts of Selling Corporation.—If a purchasing corporation merely becomes the owner of all the stock in the selling corporation by payment of the purchase price to the stockholders, the purchasing corporation will be liable for the indebtedness of the selling corporation.

3. Corporations—When Purchasing Corporation Not Liable for Debts of Selling Corporation.—When a corporation purchases all the assets and property of the selling corporation and pays the purchase price to it, and the transaction is a bona fide one, it will not be liable for the indebtness of the selling corporation.

4. Corporations—Facts Showing Purchasing Corporation to be Liable for Debts of Selling Corporation.—Where a corporation purchased the property of another corporation for a specified sum of money, and paid this money to the selling corporation under an agreement that it should be, at once, distributed among the stockholders of the selling corporation, and the purchasing corporation became the owner of the stock and elected a board of directors friendly to it, and this board of directors, several months afterwards, conveyed to it, without consideration, all the property and assets of the selling corporation, the purchasing corporation became liable for the debts of the selling corporation.

WILLIAM MARSHALL BULLITT, BRUCE & BULLITT and KEITH L. BULLITT for appellant.

J. P. JOHNSTON and S. S. YANTIS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In this case there is no evidence, and the only pleadings are a petition and the answer; apparently counsel on both sides agree as to the facts, but differ as to the conclusion to be drawn from them. The facts, as we understand them, are as follows: On March 16, 1899, the Kentucky Company, a corporation, purchased from the Commonwealth Company, a corporation, its distillery and all the rights and privileges appertaining thereto for the sum of $85,000.00, which sum was paid on that date to the Commonwealth Company with the understanding and agreement that it should be immediately distributed among the then existing stockholders of the Commonwealth Company, and pursuant to this agreement the purchase money was immediately distributed among the stockholders of the Commonwealth Company, and their shares of stock thus purchased and paid for were placed in the hands of a trustee for the benefit of the Kentucky Company. It was further agreed, as a part of the transaction, that a board of directors for the Commonwealth Company should, at once, be chosen by the Kentucky Company, and that they should continue in office until the Commonwealth Company transferred and conveyed its property to the Kentucky Company. Pursuant to this agreement, a board of directors, friendly to and really named by the Kentucky Company, was elected by the stockholders of the Commonwealth Company, or by the trustee into whose custody the stock had been placed.

On December 8, 1899, the Commonwealth Company, or rather the directors that had been selected in the manner stated, executed a deed conveying to the Kentucky Company all the property, rights and privileges of the Commonwealth Company pursuant to the contract of sale and purchase made in March, 1899, but, in the meanwhile, the distillery plant of the Commonwealth Company was operated by the Kentucky Company in the same manner that it had been prior to March, 1899.

In August, 1899, the appellee, Hettie R. Webb's executor, filed a suit against the Commonwealth Company to recover damages sustained by a nuisance committed by it during the five years preceding August, 1899, and in October, 1901, there was a judgment in favor of the executor against the Commonwealth Company for $2,500.00. Execution issued on this judgment against

the Commonwealth Company which was returned "no property found," and thereafter the executor brought this suit against the Kentucky Company to recover from it the amount of the judgment. The lower court decided in favor of the executor, and the Kentucky Company prosecutes this appeal.

Counsel for the executor admit that if the Kentucky Company, for a *bona fide* consideration paid to the Commonwealth Company, or in other words $85,000.00, had purchased from the Commonwealth Company its property in March, 1899, it would not have been liable for the debts of the Commonwealth Company, and about this there can be no doubt because a corporation has exactly the same right to sell its property as a natural person has, and the purchaser of the property of a corporation occupies towards the creditors of the selling corporation exactly the same attitude as the purchaser from an individual would occupy toward the creditors of the individual. But it is contended on behalf of the executor: "That the transaction referred to was not a purchase by the Kentucky Company of the assets of the Commonwealth Company; that the Kentucky Company paid no consideration to the Commonwealth Company which became an asset for the payment of its creditors; but on the other hand, the $85,000.00 paid by the Kentucky Company was in fact paid to the stockholders of the Commonwealth Company, because it was agreed by the parties to the transaction, 'that immediately upon the payment thereof the same should be immediately distributed' among the then existing stockholders of the Commonwealth Company; and that in return for the $85,000.00 so paid to the stockholders, the Kentucky Company acquired the control and became the beneficial owner of the stock of the Commonwealth Company, and as such owner continued the corporate existence of the Commonwealth Company and operated its plant until it saw fit to cause all the assets of the Commonwealth Company to be conveyed to it for no other consideration than the $85,000.00 paid by it to the stockholders, thus stripping the Commonwealth Company of all of its assets without paying plaintiff's debt, and leaving it a mere shell."

Stated in different terms, the contention is that the $85,000.00 paid by the Kentucky Company was really paid by it to the stockholders of the Commonwealth Com-

pany as the purchase price of their stock, and not to the Commonwealth Company as a corporate entity as the purchase price of its property and assets, and this being so the Kentucky Company became the owner of the stock in the Commonwealth Company which continued to be a corporate entity until December, 1899, when, without any consideration paid to it therefor, all of its property and assets were conveyed to the Kentucky Company.

On the other hand, the argument in behalf of the Kentucky Company is that it "simply paid $85,000.00 cash for the real estate and became the owner of the property. The $85,000.00 was then distributed as a dividend to the stockholders of the Commonwealth Company. Pending the time when the formal deed should be executed, the Kentucky Company required that the corporate stock should be placed in escrow and friendly directors elected so as to guarantee the execution of the deed at the proper time and thus prevent the stockholders from selling their stock a second time to other persons who might elect a hostile board who might refuse to carry out the contract to convey the property. That, upon payment of the full purchase price, the Kentucky Company became the actual owner of the property and was entitled to a deed at any time after March 16, 1899. The delay in transfer of the record title had no effect whatever on its ownership. The money was paid to the Commonwealth Company and its directors immediately distributed it among the stockholders. The Kentucky Company was not a director or stockholder, and having no control whatever over the affairs of the Commonwealth Company, had no power or right to dictate to it what disposition should be made of the money." Or, in other words, that the Kentucky Company in March, 1899, purchased the assets and property of the Commonwealth Company and not the stock in the company for $85,000.00 then paid to the Commonwealth Company, which $85,000.00 was distributed by the Commonwealth Company, by its directors, among its stockholders, as the directors had the right to do. And this being so, the mere delay in the actual transfer of the property of the Commonwealth Company to the Kentucky Company did not affect the rights or liabilities of either of the companies, or imposes upon the Kentucky Company any obligations or liabilities that would not have been imposed upon it if it had obtained

a deed from the Commonwealth Company in March, 1899, when the purchase price was paid.

From this statement of the respective contentions of the parties it will be seen that the question in the case is a close one, on account of the divergent conclusions that may be drawn from the admitted facts. If the Kentucky Company, in March, 1899, purchased the assets and property of the Commonwealth Company, and paid to the company $85,000.00 to be disposed of by the directors of the Commonwealth Company, as they pleased, the transaction was a *bona fide* sale and purchase, such as both the corporations had the right to engage in, and the Kentucky Company did not thereby become liable for the indebtedness of the Commonwealth Company. But if the Kentucky Company, in March, 1899, merely paid to the stockholders of the Commonwealth Company, $85,000.00 for their stock, thereby becoming the owner of the stock, and not then the owner of the property and assets of the Commonwealth Company, it became liable for the debts of the Commonwealth Company, because the Commonwealth Company was still in existence as a legal entity, its stock only had changed hands. The Kentucky Company becoming the owner of the stock in place of the stockholders from whom it purchased.

Looking again to the facts we find that although it is true the $85,000.00 was paid to the Commonwealth Company, it was paid under an agreement that it should be immediately distributed among the stockholders of the Commonwealth Company, and that in consideration of this payment to the stockholders, their stock was turned over to the Kentucky Company, or to the trustee named by it, and thereupon the Kentucky Company having the possession and control of the stock caused to be elected a board of directors for the Commonwealth Company, and these directors, so elected, in December, 1899, caused to be executed a deed conveying to the Kentucky Company all of the property and assets of the Commonwealth Company.

Under these circumstances, it seems to us that what the Kentucky Company really did in March, 1899, was to purchase all the stock of the Commonwealth Company, thereby becoming the owner of its property and assets. Of course, when it purchased all the outstanding stock of the Commonwealth Company it thereby became the owner of all the assets and property of the Common-

wealth Company, not, however, by virtue of a purchase from the Commonwealth Company as a corporate entity, but by virtue of its purchase of all the shares of stock issued by it. If it had paid $85,000.00 to the Commonwealth Company as a corporate entity, this $85,000.00 would have been a part of the assets of the Commonwealth Company and be subject to the payment of its debts, but when it paid to the stockholders of the Commonwealth Company $85,000.00 for their stock, nothing was added to the assets of the Commonwealth Company as a corporation by this payment. The Commonwealth Company was no better off than it was before the $85,000.00 was paid. The Kentucky Company, by the transaction, merely became the owner of the stock in the Commonwealth Company, and by virtue of this ownership was enabled to, and did, in December, 1899, have conveyed to it, without any consideration then or at any time paid to the Commonwealth Company as a corporation, the assets and property of the Commonwealth Company.

It is true that the $85,000.00 was paid to the Commonwealth Company as a corporation, but it was paid with the distinct agreement that it should be immediately distributed among the stockholders, and it was so immediately distributed. This being so we fail to see that it makes any difference that the money was paid directly to the corporation in place of being paid directly to the stockholders as the substantial effect of the transaction was exactly the same as if the $85,000.00 had been distributed by the Kentucky Company among the stockholders of the Commonwealth Company in place of being paid to the Commonwealth Company for immediate distribution by it of the sum paid to its stockholders.

Having determined that this is the proper construction of the facts, there is little difficulty about the law of the case.

A case presenting facts quite analogous to the facts in this case, and in which the purchasing corporation was held liable for the debts of the selling corporation is Camden Interstate Railway Company v. Lee, 27 Ky. Law Rep. 75. In that case Lee brought suit against the Ashland & Catlettsburg Street Railway Company to recover damages for injuries sustained by him, in which suit he recovered a judgment for $1,000.00 upon which execution issued and was returned no property found. While

this suit was pending, J. N. Camden bought a controlling interest in the stock of the railway company and made an arrangement with the other stockholders by which they agreed to take stock in the Camden Interstate Railway Company share for share for the stock they held in the Ashland & Catlettsburg Street Railway Company. All the stock in the street railway company being thus controlled by Camden, a deed was made by the Ashland & Catlettsburg Street Railway Company conveying to the Camden Interstate Railway Company all of its property and franchises in consideration of $1.00. After this deed was made the stock of the Camden Interstate Railway Company was delivered to the stockholders of the Ashland & Catlettsburg Street Railway Company who had not sold to Camden share for share as had been agreed.

In holding the Camden Interstate Railway Company liable for the judgment that Lee had obtained against the Ashland Street Railway Company, the court said: "The sum of the transaction was that Camden either owned in his own right all the stock of the street railway company by way of purchase, or controlled it under contracts by which the stockholders agreed to take stock in the new company for the stock which they held in the old, and while he thus controlled all the stock in the street railway company, he caused that company to deed all of its property and franchises to the Camden Interstate Railway Co., and thus the stockholders in the street railway company became stockholders in the interstate railway company. In this way the stockholders in the street railway company put all of their property and franchises in the hands of the interstate railway company, and became stockholders in that company in lieu of the street railway company. By this means the interstate railway company swallowed up or absorbed the street railway company. While there was no stipulation in the deed that the new company should answer for the liabilities of the old, the law will not allow the stockhoders in a corporation thus to change the name in which their property is held and defeat the claims of creditors. The rule is that where one corporation goes entirely out of existence by being merged into another, the liabilities of the old corporation are enforcible against the new one, just as if no change had been made. . . . The sum of it here was that Camden controlling the stock

of the old company, transferred its property to the new and issued the stock in the new to take the place of that in the old company. This was not a purchase of the stock of the old company: it was simply an absorption of the old company into the new, and the new became answerable for all the liabilities of the old company which it absorbed, and will not be heard now to say that the assets of that company were worthless, or that the stock, which was selling at 50 or 60 cents on the $1.00, was of no value.''

Another case in which a purchasing corporation was held liable is Harbison-Walker Refractories Company v. McFarland, Admr., 156 Ky. 44. The administrator of McFarland had a judgment against the Harbison and Walker Company, Southern Department, in 1908, and an execution having been returned ''no property found'' he brought suit against the Harbison-Walker Refractories Company, seeking to compel it to pay the judgment. It further appears that the refractories company issued its stock to the stockholders of the Harbison & Walker Co. in lieu of the stock they owned in that company and thereby secured a conveyance of all the property and assets of the Harbison & Walker Co., leaving the Harbison & Walker Co. without any assets or property out of which debts against it could be satisfied. In considering the law applicable to the case, and holding the refractories company liable, the court said: ''In the case at bar the refractories company took over all the assets of the 'Harbison & Walker Company, Southern Department,' which was the original debtor, leaving a mere shell, and without leaving with it any money or property whatever as a consideration for the sale of its assets. There was no liquidation of the 'Harbison &. Walker Company, Southern Department,' by selling its assets and paying its debts; on the contrary, there was a transfer of all of its property to the refractories company without any attempt to pay appellee's debt. A subsidiary corporation can not thus escape the payment of its liabilities. It is true these sales and transfers were all made by deeds of conveyance, and that the corporation had the right to sell its assets in that way, if it chose so to do; but the decision of this case depends upon the broad, equitable principle that where one corporation takes over the assets of another corporation, without paying to it any consideration therefor, as is the fact

in this case, the absorbing corporation takes the assets of the absorbed corporation *cum onere*." And further quoted from 10 Cyc. 1267, the following rule: "Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. This is a necessary extension of the doctrine that the assets of a corporation are a trust fund for its creditors. Such being the quality which equity annexes to them, when the corporation elects to go out of existence, to disposses itself of them, and to transfer them to another corporation, equity follows the trust fund into the hands of the new taker, and charges the property in the hands of such taker with the debts of the transferrer. In other words, the corporation receiving the assets is charged in equity, as a trustee in respect of such property, with the payment of the debts of the antecedent corporation." To the same effect is La Rue v. Bank of Columbus, 165 Ky. 669; Carter Coal Co. v. Clouse, 163 Ky. 337.

Again, in Justice, Admr. v. Catlettsburg Timber Company, 168 Ky. 665, the court said: "The law is well settled that where one corporation voluntarily conveys all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditor of the selling corporation, who may follow the corporation's assets, or the proceeds thereof, into the hands of whomsoever they can trace them, and subject them to the payment of the corporation's debts, except as against a *bona fide* purchaser for value. The rule does not operate, however, to disturb sales made in good faith, and for value, or in satisfaction of valid prior liens."

In Angle v. The Chicago & St. Paul Railway Company, 151 U. S. 1, 38 Law. Ed. 55, the court, in speaking of the liability of a purchasing corporation to a creditor of a selling corporation, said: "The Omaha Company became by its wrongful acts the sole stockholder in the Portage Company. It matters not that it might have been dispossessed of this position by appropriate action in the courts. It was, for the time at least, the sole stockholder. As such sole stockholder, it took advantage of its position and its powers to strip the Portage Company

of its property and secure its transfer to itself. Now, what rights, if any, a corporation may have against a sole stockholder who wrongfully causes the transfer of all the property of the corporation to be made to himself, need not be inquired into. It is clear that this stockholder cannot secure this transfer from the corporation to itself of the property of the latter so as to deprive a creditor of the corporation of the payment of his debt. To put it in another way: The Portage Company, a corporation, owed Angle $200,000.00. It had property with which that debt could be paid. The Omaha Company became the sole stockholder in the Portage Company. As such sole stockholder, it used its powers to transfer the property of the Portage Company to itself, and its conduct all the way through was marked by wrongdoing."

A case relied on by the Kentucky Company is Martin v. Sulfrage, 159 Ky. 363. In September, 1907, the Corbin Company executed a mortgage upon its outfit to the American Company to secure payment of a debt. In January, 1908, Martin bought all the stock of the Corbin Company and continued to conduct the business with one Weed as his assistant. In July, 1909, Sallie Sulfrage was injured while working in the laundry which at that time, as will be noted, was being operated in the name of the Corbin Company, but Martin was the owner of all the stock.

The Corbin Company failed to pay the mortgage to the American Company and that company, in September, 1909, brought suit to enforce its mortgage lien, and the property of the Corbin Company being offered for sale under the judgment obtained in that case was bought by the American Company for the amount of its debt which was approximately the value of the property sold.

After this, Martin and his wife bought the laundry property from the American Company and organized a new corporation known as the Whitley Steam Laundry Company, the stock in which was owned by Martin, his wife, and Weed. In July, 1910, Sallie Sulfrage sued the Corbin Company for the injury she had received in July, 1909, and in 1912 recovered a judgment upon which execution was issued and returned "no property found." Thereafter, she brought suit on her judgment against the Corbin Company and the Whitley Steam Laundry Company, and the lower court gave judgment in favor of

Mrs. Sulfrage against the Whitley Steam Laundry Company for the amount of her judgment against the Corbin Company, and from that judgment the appeal was prosecuted.

In the opinion of the court, after reviewing the Harbison-Walker Refractories Company case and the Camden Interstate Railway Company case, said that the principle announced in these cases had no application, because the Whitley Steam Laundry Company was a purchaser for value in good faith from the American Company, and this being so, it was not liable for the debts of the Corbin Company.

Having disposed of the issues in the case, as we understand them, our conclusion is that the judgment of the lower court should be affirmed, and it is so ordered.