## Federal Chemical Company v. Pioneer Coal & Coke Company.

(Decided December 15, 1922.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1.   Contracts—Mistake—Character of Evidence Required.—To show mistake in a written contract, the evidence must be clear and convincing.

2.   Contracts—Mistake—Sufficiency of Evidence.—In an action for violation of certain contracts of sale defended on the ground of mistake, in that contracts of agency were intended and not contracts of sale, evidence examined and held not sufficiently clear and convincing to make out a case of mistake.

3.   Evidence—Contracts—Parties.—While the true relationship of parties to a contract may sometimes be shown by parol evidence without an allegation of mistake, this rule is not applicable to a case where the contract itself fixes the relationship, since evidence of another relationship would necessarily contradict the writing.

TRABUE, DOOLAN, HELM &. HELM for appellant.

DAVID CASTLEMAN, J. VAN NORMAN and R. W. ROPIEQUET for appellee.

### OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Pioneer Coal & Coke Company brought suit against the Federal Chemical Company to recover damages for violations of certain contracts for the sale of pyrites cinders. The Federal Chemical Company defended on the ground that it was the intention of the parties to provide in the contracts that the Pioneer Coal & Coke Company should act as its agent to sell on a commission basis, but that, by mutual mistake of the parties, the contracts did not represent the true agreements, but were drawn in the form of contracts of sale, and counterclaimed for damages in the sum of $1,172.90 which, it is alleged, were the secret profits which the Pioneer Coal & Coke Company made while acting as agent under the Federal Chemical Company. The law and facts were submitted to the court without the intervention of a jury, and judgment was rendered dismissing the counterclaim and awarding the Pioneer Coal & Coke Company the full amount of damages prayed for. The Federal Chemical Company appeals.

Appellee is a brokerage corporation of St Louis, engaged in the business of buying and selling mining materials for its own account, and as agent for others. Appellant was a large corporation engaged in the fertilizer business, as an incident to which it produced as a by-product what is known as "pyrite cinders," being the refuse left after extracting the sulphuric acid from Spanish pyrites. Prior to the execution of the contracts in question, appellee had acted as appellant's agent in making sales of pyrites cinders to the Mississippi Valley Iron Company. In the contract of agency the sale price was fixed at $1.25 per ton, out of which appellee was to receive a commission of ten cents per ton. After that time the five contracts sued on were executed. Their language is substantially the same, with the exception of the quantity of cinders and the shipping directions, and the following copy of the contract of December 5, 1916, will suffice for all:

"CONTRACT.

"Buyer's No. 2997
Seller's No. ——

"FEDERAL CHEMICAL COMPANY,  } Agrees to sell
    of Louisville, Kentucky,

"PIONEER COAL & COKE COMPANY, } Agrees to buy
    of St. Louis, Missouri,

QUANTITY. Twenty-four hundred (2,400) gross tons.

MATERIAL. Pyrites cinders, as per sample cars shipped to Federal Lead Company.

PRICE. One dollar and fifteen cents ($1.15) per gross ton, f. o. b. cars, West Nashville, Tenn.

TERMS. Cash twentieth of each month for the preceding month's deliveries.

SHIPMENT. 200 tons per month during all of 1917. To Federal Lead Company, Federal, Illinois, via L. & N., care C. P. & S. L. at East St. Louis, Ill., on through rate of $2.10 per gross ton. The seller does not guarantee this freight rate, but will load not less than 30 gross tons per car to obtain this freight rate.

WEIGHTS. Railroad weights at point of origin to govern settlement.

CONDITIONS. This agreement is made contingent on fires, floods, strikes, shortage of cars and accidents beyond the control of either party.

It is understood that this contract shall inure to the benefit of, and be binding on the successors and assigns of both parties.

Both parties to this agreement have hereunto affixed their signatures in duplicate the fifth day of December, A. D. nineteen sixteen.

> "PIONEER COAL & COKE COMPANY,
>     By A. Yule (Signed), Secretary.
> "FEDERAL CHEMICAL COMPANY,
>     By Clarence Braden (Signed), 2nd
>                    Vice-President."

In support of the claim of mistake appellant relies on the correspondence that passed between it and appellee, and the testimony of its vice president, who conducted all the negotiations between appellant and appellee. After stating that the contract with reference to the Mississippi Valley Iron Company sale was made with appellee as broker, appellant's vice president testified as follows:

"A.    As I understand, they asked at what price we would be willing to sell it and we told them $1.15 per gross ton, and they negotiated with the Mississippi Valley Iron Company and told us to ship it and charge it out at $1.25 plus freight, $1.60 or $2.85, and to send the invoices to the Mississippi Valley Iron Company and then we were to pay them the commission or the brokerage of ten cents per ton after we had received the payment from the Mississippi Valley Iron Company. Then they let us know that the ore contained, as I understand it, too much sulphur to be used in the iron furnaces, and they could sell it for us to lead smelters and we told them to go ahead and sell it, and that we would make the same price of $1.15 net to us. Then they drew up the contracts which I believe have been filed or are to be filed, making it in the name of the Pioneer Coal & Coke Company as buyers and the Federal Chemical Company as the sellers; it made little difference to us to whom the material was actually charged. Naturally all that we wanted was $1.15 per ton, so we raised no objection to the first contract being headed as it was and the subsequent contracts were made in the same way. We understood all the way through that they were acting for us, that they were acting for the Federal Lead Company—— Objected to by Mr. Castleman. The court: Go on. A. (continued) And the St Joseph Lead Company, and

that in—probably to save the delay of any investigation of the credit by us of the two concerns that the contracts were made in their name and just simply to simplify the accounting. Mr. Castleman: I would like for the witness to state whether that was made to you in writing or orally. A. What was that? Mr. Castleman: The statements you spoke of as to the reasons—— A. No representations in writing or orally were made to us to that effect; we assumed that to be the condition."

Doubtless there are certain expressions in the correspondence between appellant and appellee that give slight support to appellant's contention, but they are outweighed by other considerations. There are five contracts executed at different times and all of them are contracts of sale. Appellant's vice president knew that they were contracts of sale and did not object to their execution. Notwithstanding the provisions of the contracts, he merely assumed that appellee was acting as appellant's agent, though no representations to that effect were made to appellant. Not only so, but in the contract with the Mississippi Valley Iron Company, in which appellee did act as appellant's agent, the purchase price was $1.25 per ton, which included the appellee's commission, whereas, in the contracts in dispute the purchase price was $1.15 a ton, thus showing that no commission was intended. We have frequently ruled that to establish a claim of mistake in a written contract, the evidence must be clear and convincing, Griffith v. York, 152 Ky. 14, 153 S. W. 31, and in our opinion the evidence in this case does not come up to the required standard.

But it is insisted that there was no necessity for clear and convincing evidence in this case, because the true relationship of the parties to a contract may be shown without an allegation of mistake. There are instances where this rule applies, Winston & Co. v. Clark County Const. Co., 186 Ky. 743, 217 S. W. 1027; Geary v. Taylor, 166 Ky. 501, 179 S. W. 425, but it is never applicable to a case where the contract itself fixes the relationship of the parties, since evidence that a different relationship existed would necessarily contradict the writing.

Judgment affirmed.