# Harlan Public Service Company v. Eastern Construction Company.

(Decided May 1, 1934.)

.136

S. S. WILLIS for appellant.
J. B. SNYDER for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The Eastern Construction Company, a corporation, was the owner of a rock crusher. The decisive question in this case is, whether it was loaned to the Harlan Public Service Company, or the Union Water Works Company, or both of them.

In its petition, the Eastern Construction Company

alleged it loaned to the Harlan Public Service Company the crusher for the construction of a reservoir, near the city of Harlan, Ky., for reasonable use; its fair market value at the time of the loan was $700 and it was totally destroyed while being used in the construction of the reservoir. The damage by its use during the period of construction was fixed at $700. An amended petition was filed in which its value was fixed at $900 and the damage at the same amount.

The Harlan Public Service Company, by the first paragraph of its answer, traversed the allegations of the petition; in the second, the terms upon which the crusher was loaned are set out, with the further allegation it was represented to be in a reasonably fit condition for the work necessary to construct the reservoir, and at the time it was received, it was out of repair, and it had expended for repair parts and labor to put it in workable condition $100, and thereafter $200 for like purpose. Later, leave was sought and obtained to withdraw the original, and file an amended and substituted answer. In the amended and substituted answer, it denied it borrowed the crusher and alleged by mistake of counsel it admitted in the original answer it had borrowed the crusher, when in fact it was loaned by the Eastern Construction to, and borowed by, the Union Water Works Company, with which to construct the reservoir used in connection with the waterworks system of the Harlan Public Service Company, which it used in supplying water to the town of Harlan; that the Union Water Works Company, under a contract with the Harlan Public Service Company, agreed to, and did, construct the reservoir with its own necessary labor, materials, machinery, and equipment; in the construction of the reservoir, the Union Water Works Company was an independent contractor, employed, controlled, and discharged its own employees, and furnished and had control of the material and equipment used by it, "free from any let or hindrance" of the Harlan Public Service Company.

The Eastern Construction Company filed a reply, traversing the amended and substituted answer. Thereafter, it filed an amended petition, making the Union Water Works Company, a corporation, a defendant, in which it charged it loaned the crusher to the Harlan Public Service Company and the Union Water Works Company. It iterated the allegations of the original

petition respecting the loan of the crusher, so as to constitute a cause of action against both the Harlan Public Service Company and the Union Water Works Company. The Harlan Public Service Company entered a motion to require the Eastern Construction Company to elect as to which of the defendants it would prosecute its action. The motion was overruled; a proper exception was saved to the ruling of the court. The Harlan Public Service Company traversed the amended petition. A judgment, without the intervention of a jury, was rendered against the Union Water Works Company. On the issues formed, a trial was had before a jury, a verdict of $500 was returned against the Harlan Public Service Company and a judgment accordingly entered, from which this appeal is prosecuted. A disposition of the issues requires a review and appraisal of the evidence in the light of those principles applicable and controlling in such cases.

For the Eastern Construction Company, Dr. E. M. Howard testified to the substance of the contract made by him with C. H. Martin. He claims in his conversation with Martin, he offered to loan the crusher to Martin, and at the time informed him as far as he was concerned he could have it, but he "rather" Martin would see Mr. Bowling and if it was agreeable with Bowling it was all right with him. The Eastern Construction Company was a corporation and Dr. Howard and Mr. Bowling were respectively the president and the vice president. The corporation employed a superintendent to look after the road construction in which it was concerned. Dr. Howard, in his testimony, did not claim he knew or had information for whom Martin was obtaining the rock crusher, or that Martin was an agent, employee, or an officer of the Harlan Public Service Company. Dr. Howard was a patron of the old Harlan Water Company which sold out to the Harlan Public Service Company, and, thereafter, the latter issued statements and collected bills from its customers for their use of water. It was his information the Harlan Public Service Company operated the water plant that furnished water to the residents of the city until the same was sold to the city. After the reservoir was completed, the Harlan Public Service Company used it as a part of its water system. Dr. Howard testified he had no idea who paid the freight for the transportation of the rock crusher, or shipped it, to the point where it

was used to construct the reservoir; he only loaned it to Martin who said he wanted it for the "water company." Mr. Bowling did not testify. J. H. Brown, local manager of the Harlan Public Service Company, who was a witness of the Eastern Construction Company, disclaimed any connection with the Union Water Works Company, and declared he had no knowledge of the connection of the two corporations. Through his testimony, letterheads were presented containing the names:

"Harlan Public Service Company, Incorporated, Subsidiary of the Union Water Works Company, Incorporated, 706-8 Guaranty Bank Building, Lexington, Kentucky, Barbourville Water, Light & Ice Company, Citizens Electric Service Company, Harlan Public Service Company, London Utility Company, Pineville Water Supply Company, Richmond Water & Light Company, Paris Water Works Company, Corbin Ice & Beverage Company, Morgantown Public Service Company, Glasgow Public Service Company, Horse Cave Water Works Company, under management of U. S. Engineering Corporation, New York, J. C. McClendon, District Manager, Telephone Ashland 6120."

Brown was asked if he had a conversation with J. B. Snyder and if he did not state to him, the Harlan Public Service Company borrowed and used the crusher in the construction of the reservoir. His answer was "No"; he only stated the crusher was in "bad shape when it come over." Also Brown testified the Union Water Works Company bought and, through Martin, paid for certain rights of way; the options were taken in the name of the Union Water Works Company; thereafter, when certain deeds conveying the same were executed, they were taken in the name of the Harlan Public Service Company. He testified Martin was the local manager of the Union Water Works Company and exercised control and supervision of its affairs and business; that Martin had no connection whatsoever with the Harlan Public Service Company. Martin purchased and paid for all material, hired all labor, and exercised exclusive control of the construction of the reservoir in the name, and as manager, of the Union Water Works Company. After the reservoir, the pump station and a pipe line were constructed by the Union Water Works Company, the same were turned over to the Harlan Public

Service Company, together with certain tools and machinery, and after the same were turned over, he (Brown) saw Bowling at his store at Loyal and Bowling directed him where to leave and place the crusher, and he did so. The Harlan Public Service Company paid no part of the expenses of the work, furnished no labor, and exercised no control over the labor, the tools, or the machinery used in the construction of the reservoir, while it was in process of construction. In explanation of a "blue print," he stated: "It's to show the different groups of water works under the management of different men in the 'Central Kentucky Group.'" A letter of the Union Water Works Company, signed thus: "The Union Water Works Company by A. J. Hinkenberg, Assistant Treasurer," and addressed to the Citizens' National Bank, inclosing a check for $427.28, was introduced. Mr. Rice, the real estate agent, with office in Harlan, testified he corresponded with the water company at Harlan relative to its plant. He addressed his letter: "Union Water Works Company, Lexington, Kentucky." He obtained the name and address of Mr. Brown, local manager of the Harlan Public Service Company. J. B. Snyder, an attorney of Dr. Howard and the attorney of record of the Eastern Construction Company, was permitted to narrate a conversation he claimed he had had with Brown, the local manager of the Harlan Public Service Company, in which Brown stated to him: "We got the rock crusher and it was in bad shape when we got it and we spent a lot of money on it"; "it broke down on the job." The witness, over the objections of the Harlan Public Service Company, was permitted to detail his statements to Brown, as well as Brown's statements to him. Continuing, he claimed Brown stated: "They did not consider they owed anything for it, for it was no account when they borrowed it." Also, the witness stated, on March 8, 1930, he was a customer of the Harlan Public Service Company and used its water, when he received a letter signed, "Harlan Public Service Company by J. H. Brown," notifying him of a "check up" of his water meter. He was permitted to read a portion of the letter, including the signature, "Harlan Public Service Company by J. H. Brown." He testified that on March 12th he mailed a check for $3 to the Harlan Public Service Company and received a receipt signed, "Harlan Public Service Company by E. A. Whitecomb." The conversation between Snyder and Brown occurred about one year after this

action was filed. The objections to the admission of this evidence were overruled; motion to exclude same was overruled and an exception reserved of record. This is a fair summary of the evidence introduced by the Eastern Construction Company tending to show the Harlan Public Service Company was a party to the contract renting the crusher.

The testimony of Snyder was offered in rebuttal or to contradict or impeach J. H. Brown, a witness for the Eastern Construction Company. The rule is "a party may contradict his own witness either [1] by other evidence, or [2] by showing that the witness has made statements different from his testimony. But in the latter case he may not be contradicted by showing inconsistent statements by him if he has only given merely negative evidence, or has failed to make for the party introducing him the statements apparently expected of him, but, where he states facts distinctly prejudicial to the party introducing him, or clearly favorable to the adversary of such party, then the party introducing him may properly be permitted to show by other witnesses that such witness introduced by him had made different or inconsistent statements. Champ v. Commonwealth, 2 Metc. 17, 74 Am. Dec. 388; Loving v. Commonwealth, 80 Ky. 507." Couch v. Commonwealth, 202 Ky. 677, 261 S. W. 7, 9.

It is a familiar rule, before other evidence can be offered showing the witness had made at another time and place a different statement to that disclosed by his testimony, he must be inquired of concerning the same, with the circumstances of time, place, and persons present, as correctly as the examining party can present them. Section 598, Civil Code of Practice; Campbell v. Bannister, 79 Ky. 205; Louisville & N. R. Co. v. Lawson, 88 Ky. 496, 11 S. W. 511, 11 Ky. Law Rep. 38; Clay v. Goldstein, 102 S. W. 319, 31 Ky. Law Rep. 390.

The declarations of an agent or officer of a corporation as to the making of a contract between his corporation and another, with which he had nothing to do, are incompetent to show what the contract was. Ray v. Grove, 7 Ky. Law Rep. 668. The reason for this rule is the statements of such agent are mere hearsay. For like reasons, an adverse statement or admission of an agent or officer of a corporation is only competent against the latter when it pertains to its business and is

made by the agent or officer of the corporation in the course of and in connection with the performance of his authorized duties. It is not competent against the corporation if it be made at a time when the agent or officer is not in the course of his employment or acting for, or on behalf of, the corporation. Ehremann et al. v. Old F. G. Walker Dist., 197 Ky. 244, 246 S. W. 789; Craig's Adm'r v. Ky. Utilites Co., 183 Ky. 274, 209 S. W. 33; Gess v. Wilder, 237 Ky. 830, 36 S. W. (2d) 617.

An examination of the testimony of Snyder discloses it was incompetent under all these general applicable rules.

Exactly upon what theory the lettcrheads, the letters, and the "blue prints" were admitted, we are unable to conceive and no reason sustaining their competency is assigned in the brief of the Eastern Construction Company. Even if they should be considered as competent for any purpose, the same wholly fail to show any connection of the Harlan Public Service Company with the making or the performance of the contract concerning the crusher or with its use in the construction of the reservoir. The testimony of H. C. Martin showing he acted exclusively for the Union Water Works Company with the borrowing and using of the crusher; in the procuring the rights of way (later deeded to the Harlan Public Service Company), the furnishing of the men and money, the material and labor, in the construction of the reservoir, is neither contradicted nor disputed by any direct or indirect testimony in behalf of the Eastern Construction Company. No evidence was offered tending to show the Union Water Works Company was an agent or a representative of the Harlan Public Service Company in the borrowing and using of the crusher, in the construction of the reservoir, or in the furnishing of men, the tools, machinery, or materials in its construction.

It was shown that the Harlan Public Service Company was a subsidiary of the Union Water Works Company. A subsidiary corporation is a corporation which is controlled by another by reason of the latter's ownership of at least a majority of the shares of the capital stock. In such case, "ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the prop-

erty of the other, or create the relation of principal and agent or representative between the two." Pullman's Palace-Car Co. v. Missouri Pacific Ry. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499; Peterson v. Chicago, Rock Island & Pacific Ry. Co., 205 U. S. 364, 391, 27 S. Ct. 513, 51 L. Ed. 841; United States v. Delaware & Hudson Co., 213 U. S. 366, 413, 29 S. Ct. 527, 53 L. Ed. 836; Interstate Commerce Commission v. Stickney, 215 U. S. 98, 108, 30 S. Ct. 66, 54 L. Ed. 112; United States v. Delaware, Lackawanna & Western R. R. Co., 238 U. S. 516, 529, 530, 35 S. Ct. 873, 59 L. Ed. 1438." Chicago, M. & St. P. R. Co. v. Minn., Civic, etc., Ass'n, 247 U. S. 490, 38 S. Ct. 553, 557, 62 L. Ed. 1229. This statement of the law must be regarded in the connection in which it is used in the particular case. The courts are agreed that this principle is not applicable where the stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose of controlling a subsidiary corporation so that it may be used as a mere agency or instrumentality of the owning corporation. United States v. Lehigh Valley R. Co., 220 U. S. 257, 273, 31 S. Ct. 387, 55 L. Ed. 458, and United States v. Delaware, Lackawanna & Western R. Co., 238 U. S. 516, 35 S. Ct. 873, 59 L. Ed. 1438; Chicago, M. & St. P. R. Co. v. Minn., Civic, etc., Ass'n, 247 U. S. 490, 38 S. Ct. 553, 557, 62 L. Ed. 1229. In the last cited case it is written:

"the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require."

Chicago, M. & St. P. R. Co. v. Minn., Civic, etc., Ass'n, supra.

We have held in a number of cases that where one corporation owns another, or another is merged in it, and the second corporation is only a name for the first, a judgment against the second may be enforced against the first. Louisville & N. R. Co. v. Biddell, 112 Ky. 494, 66 S. W. 34, 23 Ky. Law Rep. 1702; Harbison, etc., Co. v. McFarland's Adm'r, 156 Ky. 44, 160 S. W. 798; Norfolk & W. R. Co. v. Jack Murphy, etc., 213 Ky. 464, 281 S. W. 471; Carter Coal Co. v. Clouse, 163 Ky. 337, 173 S. W. 794.

144

Also, a corporation purchasing assets of another corporation, without assuming the payment of the latter's debts, will nevertheless be liable therefor, whether created by contract or the commission of a tort, if there was no consideration for the sale, or if sale was not made in good faith; but for the purpose of defeating the creditors of the selling corporation, the same as where there is a merger or consolidation of the two corporations, or if the purchasing corporation takes over all the stock of the selling corporation, or if the transaction amounted merely to a reincorporation or reorganization of the selling corporation. On the other hand it is not liable if the transaction is a bona fide one in which the selling corporation receives money to pay its debts or property that may be subject to payment thereto equal to the fair value of the property conveyed (American Ry. Express Co. v. Commonwealth, 190 Ky. 636, 228 S. W. 433, 30 A. L. R. 543; Id., 263 U. S. 674, 44 S. Ct. 4, 68 L. Ed. 500); and if one corporation merely purchases the property of another, it is not liable to the latter's creditors for its debts (Ky. Dist. & Warehouse Co. v. Webb's Ex'r, 181 Ky. 90, 203 S. W. 870; Smith v. H. Knight & Son, 211 Ky. 111, 277 S. W. 290; Norfolk & W. R. Co. v. Murphy and American Ry. Express Co. v. Com., supra). This is not an action to recover of the Harlan Public Service Company a debt of the Union Water Works Company. On the allegations of the petition, there can be no recovery herein of the Harlan Public Service Company unless there is evidence sufficient to show that it was a party to the contract by virtue of which the rock crusher was loaned and used in the construction of the reservoir. The burden of proof was on the Eastern Construction Company. The verbal contract of lending was confirmed by a letter addressed to Bowling for the Eastern Construction Company, written and signed by the Union Water Works Company by H. C. Martin. To constitute a binding contract the minds of the parties must meet (Tucker v. Pete Sheeran, Bros. & Co., 155 Ky. 670, 160 S. W. 176), and one cannot be bound by a contract to which he was not a party, nor by uncommunicated terms without his consent. Equitable Life Assur. Soc. of New York v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206. The facts or circumstances must show the making of the contract; that is, the meeting of the minds, or consent to pay for benefits. Juett v. C., N. O. & T. P. R. Co., 245 Ky. 379, 53 S. W. (2d) 551. An express contract may be proved

by circumstantial evidence. Sullivan's Adm'r v. Sullivan, 248 Ky. 744, 59 S. W. (2d) 999. A corporation can only enter into a contract through its agents and officers. Federal Chemical Co. v. Pioneer Coal & Coke Co., 197 Ky. 110, 246 S. W. 127; Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Co. et al., 241 Ky. 779, 45 S. W. (2d) 470; Paducah Newspapers, Inc., v. Goodman, 251 Ky. 754, 65 S. W. (2d) 990. However, "nothing is better settled than that a corporation may be bound by its officers or agents acting in their regular course of business, even though no specific authority be granted by the board of directors, if by subsequent action the board ratifies the acts of the officer or agent, or acquiesces therein by receiving the benefits or advantages arising from the contractual relations." First National Bank v. Bryan, 215 Ky. 338, 285 S. W. 239, 241; Enterprise Foundry & Machine Works v. Miners' Elkhorn Coal Co. et al., 241 Ky. 779, 45 S. W. (2d) 470.

The suit being one to recover damages for breach of a contract and the Eastern Construction Company having wholly failed to show the Harlan Public Service Company was a party to or the one was acting for the other, in the making of the contract, or that it ratified it or received or accepted the benefits thereof, except through some sort of an arrangement by which it acquired the reservoir, certain tools thereat and rights of way, on the completion of the reservoir, it plainly is not entitled to recover of it the damages sustained to the crusher.

For the reasons indicated, the judgment is reversed to award a new trial, consistent herewith.