**AMERICAN COMMERCIAL LINES, INC., Appellant,**

v.

**John Thomas OSTERTAG, Appellee.**

Court of Appeals of Kentucky.

Jan. 26, 1979.*

As Modified Feb. 9, 1979.

Rehearing Denied March 9, 1979.

Discretionary Review Denied
June 26, 1979.

* The decision of the panel was made prior to January 1, 1979, but the opinion was not rendered until this date.

William P. Swain, James M. Graves, Wesley G. Gatlin, Louisville, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Gary L. Gardner, Louisville, for appellee.

Before MARTIN, C. J., and PARK and LESTER, JJ.

MARTIN, Chief Judge.

This is an appeal from a Jefferson Circuit Court jury award to appellee John Ostertag for injuries he received while working on a barge owned by E. I. duPont de Nemours, Inc. DuPont had leased the barge to the appellant, American Commercial Lines, Inc. (hereafter ACL), which had in turn leased it to its wholly-owned subsidiary, Inland Tugs, Inc. While Ostertag was cleaning the barge as it was passing Angola, Louisiana, on the Mississippi River, he was overcome by sulphuric acid fumes. He brought this action pursuant to Federal Maritime Statutes commonly referred to as the Jones Act,[1] naming only ACL as a defendant.

Upon the filing of the complaint in the Jefferson Circuit Court, Ostertag attempted to serve ACL under the long-arm statute, KRS 454.210. In addition to this attempted service, Ostertag also served a summons on another subsidiary corporation of ACL, the Port of Louisville Terminal, Inc. Service of summons was also made on Floyd H. Blaske, a Jefferson County, Kentucky resident and the chief executive officer of Inland Tugs, an Indiana corporation with principal offices in Jeffersonville.

Prior to trial, counsel for appellant moved to dismiss the action on the grounds of lack of jurisdiction over ACL and appellee's alleged failure to sue the proper party. The trial judge reserved ruling on the motions until the completion of the voluminous testimony at the trial. The trial judge then decided that the plaintiff's theory of jurisdiction was the controlling law of the case. That theory was that the corporate structure of ACL was a sham, and that ACL and not Inland Tugs was the proper party defendant. The trial court concluded that it had jurisdiction over ACL, a Delaware corporation, by a service of process on Port of Louisville Terminal, Inc., another of ACL's wholly-owned subsidiaries. Having pierced the corporate veil of ACL's subsidiary structure, the Court found that it had jurisdiction over ACL because Port of Louisville Terminal, Inc. was transacting business in Jefferson County.

The Jones Act creates concurrent jurisdiction in the state and federal courts to hear injury claims by employees of maritime companies, including those operating on inland waterways. *Garrett v. Moore-McCormack*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *The J. F. Card*, 43 F. 92 (E.D.Mich., 1890). Hence, Kentucky state

---

1. 46 U.S.C.A. § 688 (1964). *Recovery for injury to or death of seaman.*

   Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the *defendant employer* resides or in which his principal office is located. (Emphasis added.)

courts have subject matter jurisdiction over this "type of case." *Duncan v. O'Nan*, Ky., 451 S.W.2d 626 (1970). However, the trial court based its assumption of jurisdiction over ACL on a theory of substantive corporate law. A very well-reasoned statement of the Kentucky law on this issue is found in *Poyner v. Lear-Siegler, Inc.*, 542 F.2d 955, 958 (6th Cir. 1976):

> The approach of the Kentucky courts to piercing the corporate veil has been described as evincing "a general aversion for any disregard of the corporate entity." Campbell, "Limited Liability for Corporate Shareholders: Myth or Matter-of-Fact," 63 Ky.L.J. 23, 48 (1975). Poyner argues that we should expand the doctrine of *Minton v. Cavaney*, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961), which provides that the corporate veil should be pierced if a corporation is grossly undercapitalized, see 1 Fletcher, *Cyclopedia of the Law of Private Corporations* § 44.1 (1974), and apply it to this case because LSI "has refused to risk any of its subsidiaries' assets in this country." But Poyner has cited no cases, and we have found none, in which the Kentucky courts have followed the growing trend of denying corporate entity treatment for inadequate capitalization, except in the event of fraudulent reorganization. E. g., *Harlan Pub. Svce. Co. v. Eastern Constr. Co.*, 254 Ky. 135, 71 S.W.2d 24, 29 (1934). We do not believe that the Kentucky courts would so extend a doctrine which they have not yet adopted in its basic formulation.

■ Apparently, several points brought out during the course of the trial led the court to the determination that the parent-subsidiary relationship of ACL and Inland Tugs was a sham. Three of the five directors on the Board of Inland were also directors of ACL, thereby controlling Inland's policy. Also, there were no formal documents of the barge leases between ACL and Inland. Further, all of Inland's assets were pledged in ACL's credit agreement with the Chase-Manhattan Bank. ACL paid, but was reimbursed by Inland, on Inland's policies of insurance. Finally, it appeared from the record that the trial court was sympathetic to the plight of Ostertag, who apparently had a valid cause of action, but who was confronted with a maze of potential corporate defendants.

However, our review of the record clearly establishes that the factors in favor of Inland's corporate status clearly outweigh those mitigating against it. There was no evidence that ACL exercised its control as the sole stockholder of Inland Tugs to frustrate recovery for injuries to barge employees regardless of the merits of their claims. The record further revealed that Inland had its own bank accounts, issued its own financial statement, operated out of its own offices, and negotiated its own labor contracts. Furthermore, Inland had approximately 900 employees and appeared from the record to have vast assets of its own that the plaintiff could have sought. The trial court should have noted that common directorships and joint credit agreements are an inevitable consequence of a parent-subsidiary relationship. Thus it should have been clear to the appellee that his de facto employer was the corporation with which he negotiated his terms of employment and by whom he was paid, Inland Tugs, and not ACL.

The failure of Ostertag to sue his employer, Inland Tugs Company, defeats any jurisdiction which may have been vested in the Jefferson Circuit Court. As was pointed out in *Haskins v. Point Towing Co.*, 421 F.2d 532 (3rd Cir. 1970), *cert. denied* 400 U.S. 834, 91 S.Ct. 68, 27 L.Ed.2d 66 (1970), at page 536:

> A primary prerequisite to any recovery under the statutory scheme of compensation provided by the Jones Act, 46 U.S.C. § 688 (1964), is the establishment by the seaman of an employer-employee relationship with the defendant. Rights given under the Act are an outgrowth of the peculiar condition of a seaman's employment   .   .   .

Thus, Ostertag has failed to establish jurisdiction in the Jefferson Circuit Court to prosecute his claim against ACL. His claim

should have been brought against his employer, Inland Tugs Company, a validly created corporation operating in conformity with United States Maritime Laws. Having no jurisdiction over the named parties, the Jefferson Circuit Court should have dismissed the complaint.

The judgment of the Jefferson Circuit Court is reversed.

PARK, J., concurs with the result only.