# Coleman v. Commonwealth.

(Decided November 6, 1931.)

WILLIS STATON and L. J. MAY for appellant.

J. W. CAMMACK, Attorney General, and DOUGLAS C. VEST for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

On Sunday, July 28, 1929, John Coleman slew Joe Herrington. He was indicted for murder, convicted of manslaughter, his punishment fixed at two years in the penitentiary, and his motion for a new trial having been overruled, he has appealed.

He urges for reversal that he was entitled to a directed acquittal, that the evidence is insufficient to support the verdict, and errors in the admission and rejection of evidence. The court erroneously allowed the widow of Joe Herrington to detail a conversation had with Coleman on Saturday afternoon, July 27. That part of his conversation in which, according to her, Coleman threatened to make way with Joe Herrington, was admissible; but the court erred in admitting the other parts of it.

During the cross-examination of Coleman, he was asked if he had not, in a conversation with Rob Ray,

just after the first difficulty on Sunday afternoon and previous to the fatal encounter, told Ray that Joe Herrington had not shot at him during the first difficulty. Coleman's answer was:

"I didn't tell Rob Ray, I don't think, that Joe did shoot, I could have told the truth and told him that but I don't think I told him that."

In rebuttal the commonwealth introduced Ray, and this is taken from the transcript of Ray's evidence:

"Q. Did he tell you that Joe Herrington didn't shoot e'er a shot as he saw of, or didn't think he shot a time, anything like that? A. He told me he thought he shot two shots at him."

The proper answer to this question was simply "yes" or "no." The witness had not been asked to state what Coleman said to him. The attorney for the commonwealth should have moved to strike out this answer as not responsive to his question, but instead of that he continued the interrogation.

"Q. Didn't you tell me and Mr. Herrington in the room just now that he told you he didn't shoot ne'er a time as he thought of? A. No, sir, I told you, John said he thought that he shot, that Joe shot two shots, that is what John told me that he thought Joe shot two shots at him."

Thereupon the commonwealth called Jim Herrington and John Herrington, the father and the uncle of the deceased, and the court permitted them over the objection and exceptions of Coleman to testify that Ray had told them, John Coleman had told him, "that Joe Herrington did not shoot ne'er a time, as he knowed of." Thus there is raised the question of the right of the commonwealth to impeach its own witness.

The rule is generally stated to be that a party cannot directly impeach his own witness. See 28 R. C. L., p. 642, sec 226. This is a much mooted question and there are many exceptions to the rule.

In this state we have a Code provision governing the question. See section 596, Kentucky Civil Code of Practice. In the case of Champ v. Com., 59 Ky. (2 Metc.) 17, 74 Am. Dec. 388, we had exactly this question. Champ had been convicted of rape of his sister-in-law. In the course of his trial he called as a witness

Thomas Brand, by whom he sought to prove that the prosecuting witness Mrs. Sallie Champ was subject to delusions and was crazy. The testimony of Brand' disappointed the defendant. Thereupon the defendant asked Brand if he had not told Martin and Webster that his aunt had had him up two or three times the night before because she thought there were men in the house and that he thought she was crazy. He answered in the negative. Champ then offered to prove by Martin and by Webster that Brand had so told them, but was not allowed to do so. In that opinion this court held section 660 of the Civil Code of Practice (now section 596) applicable to criminal cases, that the court had not erred in refusing to allow Champ to so impeach Brand, and affirmed the judgment. The court said:

"The party whose witness he is, proposes to show, by way of discrediting him, that he had, on another occasion, and in the presence of others, stated the two facts which he says upon the trial did not transpire. The effort was substantially and in effect to show that the witness had stated, out of court, facts which he failed to prove in court. Now suppose the rejected testimony of the two witnesses had been admitted, what would have been the legal effect of it? To prove affirmatively that the two facts in question did transpire, and thereby transform those facts into substantive testimony for the accused? Such might, and probably would, have been its effect, if admitted, upon the minds of the jury; but it certainly was not legitimate for any such purpose. . . . The obvious meaning of the rule is, that where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist, by proving that the witness had made statements to others inconsistent with his present testimony. But a case like the present, where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is not within the reason or policy of the rule, and the witness cannot be contradicted in such case by evidence that he had previously stated the same facts to others."

This case is simply the Champ Case turned around. In the Champ case it was held not to be error to refuse to allow Champ to contradict his own witness where the

witness had merely disappointed him by failing to give the testimony Champ expected, and in this case it was error to allow the commonwealth to contradict its witness Ray where Ray had disappointed it by mere failing to give the testimony it had expected.

The attorney for the commonwealth had sought to get from this witness evidence of an admission by Coleman against his interest, but instead of getting that he got evidence of a self-serving declaration made by Coleman and, instead of moving to strike it out as not responsive to his question, he was improperly allowed to impeach the witness.

The effect of this contradiction was not to establish that Coleman had actually said Joe Herrington did not shoot at him in the first difficulty, though it may have been so accepted by the jury, but only to discredit Ray by showing that out of court Ray had made a different statement from the one he made in court.

If the commonwealth had had some witness other than Ray who had heard this conversation between Ray and Coleman, it would be permitted to introduce that witness and prove by him that Coleman had told Ray that Joe Herrington did not shoot at him in the first difficulty even though one of the effects of that evidence would be to discredit Ray. The rule is:

Although a party may not impeach his own witness directly, he may show collaterally that the statements made by him are not in fact true, and thus incidentally discredit him.

"A party calling a witness is not precluded from proving the truth of any particular fact by any other competent evidence in direct contradiction to what such witness may have testified; and this not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief. This is one of the exceptions to the general rule that a party cannot impeach his own witness." Norwood v. Kenfield, 30 Cal. 393; Fairly v. Fairly, 38 Miss. 280; Jackson v. Leek, 12 Wend. (N. Y.) 105.

But he certainly cannot be allowed to prove by other witnesses inconsistent statements previously made by the witness in question, which would not be admissible as independent evidence, and which, therefore, can

12

have no effect but to impair the credit of the witness with the jury. Adams v. Wheeler, 97 Mass. 67; Smith v. Price, 8 Watts (Pa.) 447; Regina v. Ball, 8 Carr & Payne, 745.

No one would suggest this conversation between the commonwealth's attorney and Ray, in the presence of Jim and John Herrington out of the presence of Coleman, would be competent against Coleman independently of Ray's testimony. The only effect of it is to affect the credibility of Ray, and under the circumstances here it was not admissible. The rule is thus stated in 28 R. C. L. p. 643, sec. 227; ''While a party may contradict his witness as to a fact material in the cause, although the effect of that proof may be to discredit him, he cannot adduce such a contradiction when it is only material as it bears upon the witness's credibility.'' To same effect, see 40 Cyc. p. 2766 et seq. Witnesses, V, E, I, b.

We reserve all other questions, and for the two errors discussed the judgment is reversed.