**BILL GOFF, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 31, 1968.

As Modified on Denial of Rehearing
Nov. 15, 1968.

A. Dale Bryant, Jackson, for appellant.

Robert Matthews, Atty. Gen., Curran Clem, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

On his trial for murder, a jury convicted Bill Goff of voluntary manslaughter and fixed his penalty at imprisonment for fifteen years. Goff admitted slaying Oscar McClees but contended he did so in self-defense. On appeal he asserts (1) that a member of the jury which convicted him was mentally incompetent and that he had not known of it until after the trial; (2) that the court erred in permitting the Commonwealth's attorney to attempt to impeach a witness for the Commonwealth; and (3) that incompetent evidence was received against him.

It is unnecessary to relate the details of the shooting except to say that the Commonwealth's evidence tended to show that

Goff shot McClees without provocation, whereas Goff's evidence presented a theory of self-defense. There was a clear jury issue which was resolved adversely to Goff.

■ After the verdict, appellant's counsel sought a mistrial on the claim that Burnett Neace, a member of the trial jury, was mentally incompetent. In his motion for new trial, appellant asserted that Neace was mentally incompetent at the time of the trial, and in support of that allegation stated that Neace's wife serves as his committee to receive monthly checks from the Veterans Administration, based upon Neace's physical disability. Appellant presented no evidence that Mrs. Neace was lawfully appointed as committee nor did he make any effort to show that any inquest had been had as to Neace's mental condition. Appellant failed to present any evidence reflecting incompetence of Neace at the time of the trial. In 50 C.J.S. Juries § 277, page 1060, it is written: "Ordinarily the competence of a juror will be presumed and the burden is on the challenging party to establish his disqualification." We have recognized that the "burden" will shift to the Commonwealth when the accused has adduced evidence that a member of the jury was related to the victim in a homicide case. Pennington v. Commonwealth, Ky., 316 S.W.2d 221, 224. In the case before us, the accused did not make a prima facie case so as to shift the burden to the Commonwealth. The appellant simply failed to present enough evidence to the trial court to make an issue as to Neace's alleged incompetence.

■ Appellant asserts that the court erred in permitting the Commonwealth's attorney to attempt to impeach a witness offered for the Commonwealth. He relies on Webb v. Commonwealth, Ky., 314 S.W. 2d 543, and Coleman v. Commonwealth, 241 Ky. 8, 43 S.W.2d 185. The Webb case is inapplicable as it deals with the question of a "turncoat" witness who fails to testify as hoped by the prosecution. The Coleman decision is also based on the principle

enunciated in Webb but does contain the statement that generally a party cannot directly impeach his own witness. Then existing Civil Code Section 596 was relied upon. Significantly, presently controlling CR 43.07 has modified the rule as contained in former Civil Code Section 596. Actually, we see nothing in the record which would warrant the argument that the Commonwealth's attorney undertook to impeach the witness, but even if he had, there would have been no error for the reason stated.

■ The court permitted the widow of the victim to relate the victim's account of the fatal affray. The statement was damaging to the appellant, and its admission would have been quite prejudicial if it had been incompetent. The statement was admitted under the familiar exception to the hearsay rule known as the "dying declaration" rule. Mrs. McClees had testified that when her husband first entered the hospital at Lexington on Wednesday, the day he was shot, he had expressed some hope of recovery. He again expressed some hope of recovery on the next day. However, Mrs. McClees gave no evidence of any incriminating statement made by the decedent at the times when he indicated his hope of recovery. The statement she gave which included the damaging evidence was made by the decedent when he had abandoned hope of recovery and recognized the imminence of his death, which occurred on the Friday following his admission to the hospital. In Commonwealth v. Belcher, 255 Ky. 475, 74 S.W.2d 955, it was reaffirmed that the admissibility of a dying declaration is not affected by expressions of belief by the decedent, made before or after the dying statement, to the effect that he expects to get well. The criterion for measuring the admissibility of the dying declaration is the state of mind of the declarant when the declaration was made. The fact that earlier or later he may have harbored the hope of recovery has no bearing upon the admissibility of a declaration uttered when he spoke in light

of his own belief of impending dissolution. Measured by these principles, the dying declaration was properly received in evidence.

The judgment is affirmed.

All concur.