CASE 100.—PROSECUTION AGAINST NICHOLAS GARRISON
        FOR MURDER.—May 15.

## Garrison v. Commonwealth

Appeal from Leslie Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals. Affirmed.

Witness—Impeachment—Evidence of—Contradictory Statements.
    Civ. Code Prac., section 596, provides that the party producing
    a witness may contradict him by other evidence, and by
    showing that he has made statements different from his
    present testimony.  Held, that where, in a criminal case, a
    witness for the Commonwealth did not merely fail to prove
    the facts sought to be established by her, but gave other
    testimony corroborative of defendant, the Commonwealth had
    a right to prove that the witness in question had made state-
    ments to show the facts which the Commonwealth had
    sought to establish by her.

JAMES D. BLACK, PITZER D. BLACK, LEWIS & CALVERT
and LYTTLE & LYTTLE, for appellant.

1. Where a witness does not testify to any fact prejudicial to
the party calling her, simply failing to prove facts, which if
proven, would be to the advantage of the party, it is error to
permit the party that introduces the witness to call another, for
the purpose of proving that she has made statements, when not
under oath, differing from her present testimony.

### AUTHORITIES CITED.

Champ v. Commonwealth, 2 Met., 22, et seq; Walker v. Smith,
6 Ky. Law Rep., 457; Loving v. Commonwealth, 80 Ky., 512;
Nicholson v. Dunn, 21 Ky. Law Rep., 644; Feltner v. Common-
wealth, 23 Ky. Law Rep., 1111.

B. B. GOLDEN for appellee.

N. B. HAYS, Attorney General, CHAS. MORRIS, WILLIAM
LEWIS and L. D. LEWIS, of counsel.

Section 596 of the Civil Code, as construed by this court, in
the cases cited in the brief for appellant, is presented as the law
governing the question made as to the right of plaintiff under
the circumstances disclosed in this record to contradict the said
witness, Laura Hoskins, after making her a witness for the
State. We concede the rule to be that a party producing a
witness who fails to testify to "anything prejudicial" against the
side introducing him, cannot contradict him by proof of state-
ments made out of court not under the sanction of an oath. Where
such procedure amounts to making such testimony or rather the
proof of such statements out of court substantive evidence against
the opposing party.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

On July 29, 1905, Felix Hoskins came on horseback
to the house of Elihu Garrison, his uncle and the
father of the appellant, Nicholas Garrison. There
had been some litigation between Felix Hoskins and
Elihu Garrison in the Leslie quarterly court over a
promissory note, in which Hoskins pleaded non est
factum, charging that the note which Garrison sued
on was a forgery. When Hoskins rode up, without
dismounting, he entered into a conversation with
Martha Garrison, the mother of Nicholas. Shortly
after this Nicholas Garrison came to the house to get
some fire to do some work in the shop near by, and
he and Hoskins began talking. After they had been
talking some minutes the subject of the suit came up,
and in a short time hot and angry words were pass-
ing. The mother of Nicholas Garrison had by this
time gone to another part of the premises. Laura
Hoskins, a sister of Nicholas Garrison, was upstairs
in a room just over where they were talking. Garri-

son went into the house, and Hoskins rode on his horse along the side of the house looking in at the window. Garrison came out of the door with a shotgun, and shot Hoskins, sitting on his horse. Hoskins got down off his horse, and there was a scuffle between him and Garrison, in which the gun went off the second time, and in which Garrison beat Hoskins with a stick. Hoskins died shortly afterwards. The proof tends to show that the second shot missed Hoskins. The defendant testified that Hoskins made a motion to draw a weapon and that for this reason he shot him. There is no proof that Hoskins was armed. Shortly after the shooting the defendant stated that he did not hardly know how they got into the racket; that they got into a quarrel over a lot of business some way, and he shot him; that Hoskins was not doing anything to him at the time, but made the impression on him that he was going to hurt him. Being asked whether Hoskins was armed, he answered that he did not see anything. After the homicide Garrison fled to Canada, but subsequently returned and gave himself up. The jury found him guilty of murder, and fixed his punishment at confinement in the penitentiary for life.

The only matter necessary to be noticed on the appeal is the alleged error of the court in the admission of evidence. Laura Hoskins, the sister of the appellant, who was upstairs at the window, was introduced by the Commonwealth and testified that she had a child with her and paid no attention until she heard the loud talking; that after this she looked out and Hoskins was going up through the yard and came up by the side of the lower room; that she heard somebody walking in the room beneath; that there

was a gun in that room, and she looked out of the window, and Hoskins was in the yard by the side of the room on his horse. The next she noticed she heard the gun fire, and she looked out and saw Hoskins getting off his horse; that she then started down the steps, and as she went down the steps the second shot fired; that when she got to them the two men were jerking and surging over the gun, each trying to get it; that she took hold of the gun herself with both hands, and got the gun, and then her brother took the gun away from her; that her brother had a stick and was striking Hoskins over the head with it; that after she got the gun Hoskins fell down on the ground, and she put her apron over him, and about that time her mother came. She was then asked if she did not tell A. B. Morgan on the day after the killing that she saw the muzzle of the gun punched out at the door just before it fired, and that when the second shot fired she had hold of the gun and jerked it so that it missed Hoskins; that she had to hover Hoskins while he was down to keep her brother from hitting him in the head with a stick; that her brother was going in the house to get another cartridge; and that she grabbed him and scuffled with him. She denied making these statements, and the Commonwealth was permitted over the objection of the defendant to prove by other witnesses that she had so stated on the day after the homicide; the court charging the jury that the testimony was not substantive evidence against the defendant, and was only to be considered by them to contradict the witness Laura Hoskins.

Section 596 of the Civil Code of Practice provides: "The party producing a witness is not allowed to

impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him; but he may contradict him by other evidence, and by showing that he has made statements different from his present testimony." Construing this section of the code in Champ v. Commonwealth, 59 Ky., 24; 74 Am. Dec., 388, the court said: "Prior to the adoption of the Civil Code, a party who was surprised by the testimony of his own witnesses was allowed to contradict him only by proving that the fact stated in evidence was different. By the code, as already shown, an additional means of contradiction is allowed. It may be shown that the witness has made statements different from his present testimony. The obvious meaning of the rule is that, where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist by proving that the witness had made statements to others inconsistent with his present testimony. But a case like the present, where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is not within the reason or policy of the rule, and the witness cannot be contradicted in such case by evidence that he had previously stated the same facts to others." This case was followed in Kennedy v. Commonwealth, 14 Bush, 360; Loving v. Commonwealth, 80 Ky., 512; 4 Ky. Law Rep., 457, and Feltner v. Commonwealth, 64 S. W., 959; 25 Ky. Law Rep., 1111. The rule may therefore be regarded as settled that where a witness does not state facts prejudicial to the party introducing him, but simply fails to prove facts supposed to be beneficial to him, he

cannot prove by others that the witness had stated the facts sought to be proved. In other words, where the witness simply fails to prove a fact, the party introducing him cannot be allowed to show that he stated out of court that the fact existed.

If Laura Hoskins, when she was introduced by the Commonwealth, had stated that she was in the room upstairs and did not see the difficulty, or had failed to prove, when introduced by the Commonwealth, the facts of the difficulty, the rule invoked by the appellant would apply. But it will be observed that she did not do this. She testified to seeing the deceased riding along by the side of the house at the time she heard her brother inside; that both of the shots of the gun were fired before she got downstairs; and that she saw Hoskins get down off of his horse and saw the two men struggling over the gun. She professes to narrate all that occurred after she got down stairs, and the version of what so occurred as given in her testimony fits in with the testimony given by her brother in his own defense and is strongly confirmatory of that testimony. The Commonwealth had no way of weakening the effect of this confirmatory testimony given by her, except to show that she had stated otherwise to different persons just after the homicide occurred. If this contradictory evidence had not been admitted, the testimony of Laura Hoskins on the whole would have been favorable to her brother. It is not a case where a witness introduced by a party simply fails to prove a fact sought to be established, but the witness here undertakes to narrate the transaction, and by omitting things that occurred, as her first statements show, to give the transaction a different color from that it would bear

if all the facts were told. To illustrate: If she had testified that when she got down to the ground her brother was begging Hoskins to desist and trying to pacify him, the Commonwealth might have proved that just after the homicide she stated the contrary. When she states on oath what her brother did after she got down on the ground, omitting criminating things which he did, she as truly gives substantive evidence for him as if she had stated things in his favor as done by him which he did not do. In her testimony on the trial she professed to tell all that occurred after she reached the ground. The jury, if they believed the witness, would have accepted this as the true version of what did occur after she reached the ground, and to prevent the jury from believing the witness, and thus giving credit to the defendant's own testimony, which was thus confirmed, the Commonwealth had a right to show that the witness had made contrary statements just after the homicide.

On the whole case, we see no error to the defendant's prejudice.

Judgment affirmed.