### Helton v. Commonwealth.

(Decided March 25, 1924.)

### Appeal from Lincoln Circuit Court.

1. Indictment and Information—Sufficient if Person of Common Understanding Knows Charge.—Demurrer to an indictment was properly overruled, where the offense charged by it was stated with sufficient clearness and certainty to enable the defendant, assuming he was a person of common understanding, to know what he was charged with and to enable the court to pronounce sentence.

2. Criminal Law—Statement of Witness Out of Court Held Incompetent as Showing Mere Rumor Connecting Defendant with Alleged Offense.—In a prosecution for possession of moonshine still

where character witness for defendant was later recalled as witness by the Commonwealth and asked if he had not, at a time indicated, informed a deputy sheriff that there was talk in the neighborhood that defendant was engaged in the whiskey business, and, witness denying such statement, the deputy sheriff was permitted to testify that witness made the statement to him, the evidence was clearly incompetent as substantive testimony, as by its admission the Commonwealth was permitted to prove a mere rumor connecting the defendant with an unlawful possession.

3. Witnesses—Witness Not to be Contradicted or Discredited by Showing Falsity of His Denial that he had Retailed Certain Rumor. —Where, in a liquor prosecution, a witness denied that he had informed a deputy sheriff that there was talk in the neighborhood that defendant was engaged in the whiskey business, evidence of the deputy that he did make such statement was incompetent to contradict or discredit the witness.

4. Criminal Law—Objection to Oral Instruction Not Considered Unless Made Ground for New Trial.—Court of Appeals cannot consider complaint of oral instructions to jury where not made a ground for new trial.

5. Intoxicating Liquors—Evidence Held Insufficient to Establish Guilt of Possession of Still.—In an action for unlawfully being in possession of an illicit moonshine still, evidence held insufficient to warrant a conviction.

W. B. HANSFORD and GEORGE D. FLORENCE for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Settle—Reversing.

The appellant, Modam Helton, his father, William Helton, and Willis Brown, were jointly indicted, charged with the offense of unlawfully having in their possession an illicit "moonshine" still designed for use in the unlawful manufacture of intoxicating liquor. Modam Helton and Willis Brown were jointly tried for the offense charged in the indictment, which, as to the appellant, Modam Helton, resulted in a verdict by the jury finding him guilty and fixing his punishment at a fine of $250.00 and imprisonment of three months in jail.

The record contains an order showing the dismissal of the prosecution as to Brown at the close of the evidence, but whether the dismissal was on the motion of his own counsel, or that of the Commonwealth's attorney, does not appear from the record. Although it is shown by the bill of evidence that William Helton, the third defendant in the indictment, was present at the trial of the

appellant and Brown, and then testified as a witness in their behalf, the record fails to indicate why he was not tried with them, or what disposition was made of the indictment as to him; but it would seem from what is intimated by counsel that it was dismissed as to him either before or subsequent to the trial of appellant and Brown.

The appellant was refused a new trial, and has appealed, seeking the reversal of the judgment of conviction because of error committed, as alleged, by the trial court in the following particulars: (1) In overruling the appellant's demurrer to the indictment; (2) in admitting incompetent evidence; (3) in overruling the appellant's motion made after the introduction of the Commonwealth's evidence and renewed at the conclusion of all the evidence, for an instruction peremptorily directing his acquittal by verdict of the jury; (4) in orally instructing the jury upon the law of the case; (5) because the verdict was flagrantly against the evidence and the result of passion and prejudice on the part of the jury.

Tested by the provisions of sections 122-124, Criminal Code, the indictment in question is not open to attack by demurrer; for, considered as a whole, the offense charged by it is stated with sufficient clearness and certainty to enable the several defendants accused of its commission, assuming they are persons of common understanding, to know what they were charged with and to enable the court to pronounce sentence. This being so, the action of the trial court in overruling the appellant's demurrer to the indictment was not error. Meredith v. Commonwealth, 199 Ky. 544; Overstreet v. Commonwealth, 147 Ky. 471; Rutland v. Commonwealth, 160 Ky. 77; Collins v. Commonwealth, 195 Ky. 745; Forman v. Commonwealth, 195 Ky. 758.

The evidence complained of as incompetent was furnished in part by the testimony of Harvey Brown and in part by that of Monroe Thompson, all objected to by the appellant. Brown was first introduced by the appellant and testified as to the latter's character and that of his father, Wm. Helton, stating, among other things, that the reputation of each of them was good and that he had never heard either of them charged with operating a still or being engaged in the liquor traffic. Brown was later recalled as a witness by the Commonwealth and asked if he had not, at a time indicated, informed Monroe Thompson, then a deputy sheriff, that there was talk in the neighborhood of the Heltons that appellant and his father

were engaged in the whiskey business. Brown denied making such a statement, and Thompson, upon being introduced, testified that Brown had made to him the statement denied by the latter. This evidence was clearly incompetent, either as substantive testimony or for the purpose of contradicting or discrediting Brown; and by its admission the Commonwealth was permitted to prove a mere rumor connecting the appellant with an unlawful business, the nature of which was calculated to create in the minds of the jury a belief that it necessarily involved, or, at least, induced the commission by him of the offense charged in the indictment. It is a well known rule that a witness can not be contradicted in the manner thus attempted by the Commonwealth. In other words, a witness who fails to testify as to substantive facts can not be asked if he had not made statements to others, out of court, that such facts exist, for the purpose of proving that he did make such statements, or that the facts did exist, as that would be an attempt to make declarations out of court substantive evidence. Kennedy v. Commonwealth, 14 Bush 340; Loving v. Commonwealth, 80 Ky. 507. The scantiness, as a whole, of the evidence relied on to prove the appellant's guilt leaves no doubt of the prejudicial effect upon his substantial rights of the evidence in question and compels us to declare its admission by the court reversible error.

The appellant's complaint of the action of the trial court in orally instructing the jury upon the law of the case, we are not at liberty to consider, because it was not made a ground for a new trial moved for in the court below. The really material question presented for decision by the appeal is, whether the appellant was entitled to the peremptory instruction asked on the trial in the court below. It appears from the evidence that the Commonwealth's chief witness, William Hopkins, town marshal of Crab Orchard, supplied with a search warrant, accompanied by his son-in-law, Sizemore, went to the farm of a Mrs. Williams, which adjoined that of Wm. Helton, appellant's father, and in a secluded place thereon enclosed in a cornfield cultivated by Willis Brown, discovered near a small spring the still described in the indictment, which was concealed in a shock of corn. Hopkins went to the home of William Helton about 500 yards distant and there found the appellant, who resides with his father, and at Hopkins' request appellant went with him to where the still was found to assist him in loading it on his

automobile for removal to Crab Orchard. Upon arriving where the still was found the appellant willingly rendered Hopkins the assistance required of him and later returned with the latter, as they had previously gone, by a driveway leading from the spring near the place where the still was found through the cornfield on the Braly farm to the county road, where they separated, Hopkins returning to Crab Orchard and the appellant to his father's home by a roadway leading thereto that left the county road a short distance from where it was entered by the road through the Braly cornfield traveled by Hopkins and appellant from the spring near which the still was seized to the county road.

Hopkins further testified that the still was found in a very secluded swamp, covered with trees and bushes, and that before finding the still he discovered within a few feet of it near the spring, ashes and the remains of a recent fire where the still had evidently been operated, and at the same place several empty barrels and about 150 gallons of mash. Hopkins also testified that he discovered tracks, some of them made by a person wearing a pair of No. 9 gum boots, in the path that led from the spring to the corn shock where the still was concealed and in the road running therefrom through the cornfield to the county road, and that when he obtained the assistance of the appellant in loading the still for removal the latter was wearing gum boots, but the witness wholly failed to state whether his discovery of the gum boot tracks, or other tracks, was made before or after the arrival of the appellant where the still was found. Hopkins admitted that he did not then charge the appellant with the ownership of the still, or its previous operation, or arrest him for any offense connected with its ownership or operation, but said he did ask him "if he knew of or had any idea as to who had been running the still," in reply to which the appellant said "he had no idea who was running the still."

Hopkins applied no measure to the gum boot tracks he claimed to have seen where the still was found, nor did he compare them with any tracks made by the appellant while assisting him to load the still in the automobile; and although it was admitted by Hopkins that he had previously been informed of the existence of the still and its location by the Bralys, father and son, neighbors of the Heltons, and he and Sizemore were conducted by them to the place where the still was found, notwithstanding

the opportunity thereby afforded the Bralys of there seeing everything that was discovered by Hopkins, neither of them was introduced as a witness in behalf of the Commonwealth to corroborate the latter's testimony with respect to the gum boot tracks, or any other statement made by him.

The only other witness, besides Hopkins, introduced in chief for the Commonwealth, was Dee Sizemore, who accompanied him on the hunt for the still and was left in charge of the still while Hopkins went to the home of the Heltons to obtain assistance in loading it for removal; and as Sizemore frankly admitted that no tracks of any kind were seen by him at or about the still or in the path or roadway leading to it, it is obvious that his testimony was of no corroborative value to that of Hopkins. It was, however, more favorable than hurtful to the appellant, as it showed that nothing was said by Hopkins upon the discovery of the still, or after the arrival of the appellant, charging or intimating any connection on his part, or that of William Helton or Wilson Brown, his co-defendants in the indictment, with the ownership, operation or possession of the still in question.

It is patent from the evidence of the Commonwealth that it wholly failed to establish the appellant's guilt. It did not conduce to prove that he was ever seen at or near the place where the still was found, that it was on land that was ever owned by him or in his possession, or that there is or was a path or roadway leading from where the still was found to or in the direction of his home. It also failed to show that appellant ever owned, operated or had in his possession this or any other still, or that his reputation is that of a person who engages, or has engaged, in the manufacture or sale of intoxicating liquor; nor did it conduce in any way to identify him as the maker of the gum boot tracks, or his gum boots of a size capable of making the tracks the Commonwealth's witness, Hopkins, claims to have discovered at or near the still in question.

Upon the other hand, the testimony of the appellant completely destroys any suspicion of his guilt that might, in its absence, have been created by that of Hopkins' discovery of the gum boot tracks, as it shows, without contradiction, that his gum boots, which were worn that day because of his assisting his father in a heavy morning dew with his crop of millet, could not have made the tracks claimed to have been seen by Hopkins, for they

were No. 7 in size, whereas the tracks the latter said he discovered were in his opinion made by No. 9 gum boots or shoes. Appellant also testified that he had never known of the existence of the still found by Hopkins, or seen it, until he assisted him to load it in the automobile; that he had never been to the place where the still was found, or owned, been in possession of, or operated a still, nor had he ever been engaged in the manufacture or sale of intoxicating liquors.

We find that appellant's testimony was corroborated by much of that given by his father and Wilson Brown, and is uncontradicted from any source, in addition to which there was testimony furnished by eight apparently reputable witnesses, residents of the Helton neighborhood, all to the positive effect that they knew the reputation of the appellant, his father and Wilson Brown; that the reputation of each of them was good, and that they had never heard any of them "accused of violating any of the liquor lows."

In view of the evidence, even of the Commonwealth alone, we can but conclude that it was insufficient to establish the appellant's guilt, or to authorize the submission of the case to the jury; hence we must declare the refusal of the trial court to give the instruction directing his acquittal by verdict of the jury, reversible error.

Our view of the case may be better understood from the following excerpt quoted from the opinion in Johnson v. Commonwealth, 194 Ky. 568:

> "All right thinking persons must concede the necessity of enforcing the law prohibiting the manufacture and sale of intoxicating liquors, but such necessity cannot justify the conviction of those charged with the violation of such laws upon mere suspicion, as was done in this case. The guilt of the offender must be established by the evidence beyond a reasonable doubt, as in the case of other law violators. Guilt may be shown by circumstantial evidence sufficient to destroy every reasonable hypothesis of innocence, but it can not be established upon mere suspicion or conjecture. Hence it follows that the appellant's conviction in this case was unauthorized by the evidence, for which reason he was entitled to the directed verdict of acquittal requested by him."

The conclusion stated makes it unnecessary for us to consider the remaining grounds for reversal urged by

the appellant. For the reasons indicated, the judgment of the circuit court is reversed, with directions to that court to set it aside and grant the appellant a new trial, not inconsistent with the opinion.