## Couch v. Commonwealth.

(Decided April 18, 1924.)

### Appeal from Clay Circuit Court.

1. Witnesses—Method by which Party May Contradict Own Witness Stated.—A party may contradict his own witness either by other evidence, or by showing that the witness has made statements different from his testimony, but in the latter case he may not be contradicted by showing inconsistent statements by him, if he has only given negative evidence, or has failed to make for the party introducing him the statements apparently expected of him.

2. Criminal Law—Argument of Prosecuting Attorney Should be Based on Evidence.—Prosecuting attorney in drawing his deductions should confine himself to legitimate inferences to be drawn from the testimony introduced and the physical facts in evidence.

3.   Criminal Law—New Trial should be Granted for Insufficiency of
     Evidence, Though no Motion Made for Directed Verdict.—Where
     a verdict of guilty was not sustained by sufficient evidence, the
     trial court should have granted a new trial on that ground, though
     there was no motion for a directed verdict.
4.   Homicide—Evidence Held Insufficient to Sustain Conviction for
     Manslaughter.—Evidence held insufficient to sustain conviction
     for manslaughter.
5.   Criminal Law—Jury Cannot Assume Facts Without Evidence.—
     Though juries are the judges of the credibility of witnesses, and
     may absolutely disregard the testimony of any or all of them,
     they are not authorized arbitrarily to assume without evidence
     that a thing happened in some way different from that shown by
     the testimony, unless the physical facts furnish evidence to justify
     it.

WM. LEWIS and T. H. WEBB for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K.
BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

Appellant, under indictment charged with the murder
of Jesse Smith, was convicted of manslaughter, and has
appealed. James Wagers and Jake Wagers were jointly
indicted with him, but the prosecution as to them appears
to have been discontinued.

The principals and the eye-witnesses reside in the
same general locality in Clay county, and are nearly all
related, either by blood or marriage, to appellant or
Smith, and some to both.

On the day of the homicide there was some excite-
ment in the locality where they lived growing out of the
fact that one man's house had been shot into by unknown
persons, and others claimed to have been fired upon in
the same way. As a result of this situation late that
afternoon there congregated on a hill, or elevated place
in the neighborhood, some eight or nine persons, six or
seven men and two women, who were discussing the oc-
currences of the day. The men were all armed with
pistols, except one who had a Winchester rifle. The party
consisted of Jesse Smith, John Wagers, Jake Wagers,
William Wagers, James Wagers, Frank Wagers, Ellen
Couch and Jane Wagers, the two latter being respectively
the mother and sister of appellant. While they were
there appellant was seen some distance away coming to-

ward the party. Up to this time there is no evidence that any controversy or ill-feeling had been exhibited by any of them, or that any unpleasant occurrence had taken place there. Before appellant approached Smith was sitting on a rock and had two pistols, one a 32 of which he was the owner and the other a 38 special belonging to another member of the party, but which he had in his hand as appellant approached. The hill was steep, and as Couch came up to the party Smith arose from his seat on the rock with the 38 special in his right hand,. took several steps down the hill toward where appellant was approaching, and with abusive oaths and a threat to kill him jabbed him in the body with the pistol in his hand, whereupon appellant with his left arm knocked up the pistol in Smith's hand, which went off and shot Couch through the arm, and immediately with his right hand drew his own weapon and shot Smith three times, from which he died.

Six of the eye-witnesses, two by the Commonwealth and four by the defendant, were introduced as witnesses, and there is no material difference in the testimony of any one of them as to the vital points of the evidence. They vary somewhat as to the exact language used by the two principals at the time, and one of them claims not to have seen the actual shooting because his attention had been distracted at the moment, but was immediately present and heard what occurred.

There is nothing in the evidence indicating or even suggesting that either of the principals charged the other, or even suspected the other, of having any connection with or part in the shooting which had occurred during the day in the neighborhood. On the contrary the evidence tends to show there had been no previous difficulty or ill-feeling between the two principals, although it is shown that appellant's father, who was the owner of some property in the neighborhood, had remonstrated with Smith, who was operating a nearby still, for burning the rails of the elder Couch in its operation, appellant himself not being present at the time, and so far as the evidence shows, having no connection with the transaction. Appellant fired three shots and Smith must have fired two, although the second shot fired by him is not accurately accounted for. The 38 pistol, however, which he had in his hand when he approached the appellant was afterwards found, and two of the shells had been exploded. No one present fired a shot other than the two

principals, although one of the Wagers was wounded by a 38 ball, apparently by accident, from the pistol of the decedent.

The Commonwealth introduced two of the eye-witnesses, John and Jake Wagers, each of whom gave in substance the testimony which we have recited, except that John Wagers claimed not to have seen the actual shooting, although within a few feet of the parties, because his attention at the time was directed to something else, and claiming he expected no trouble. He likewise differs slightly from the other persons present as to what was said between the principals as they approached each other, his testimony being that one or the other, but he did not know which, said at the time to his adversary that he had nothing against him.

After these two witnesses had thus testified, and had not only failed to make out a case for the Commonwealth, but had on the contrary made out a case of self-defense for the defendant, the Commonwealth, after laying the foundation for contradiction of each of its own witnesses, introduced four or five witnesses who stated in substance that on the morning after the homicide John and Jake Wagers were at the home of the decedent, and there in the presence of several witnesses stated in substance that when Couch came up the hill he said to Smith, "I have nothing against you," and Smith said the same to Couch, and Smith reached out his right hand, and Couch reached out his left hand, and while they were thus shaking hands Couch pulled his pistol with his right hand and shot Smith, and then shot three times at Jake Wagers.

This evidence was admitted by the trial court with the admonition, however, that it was admitted for the purpose only of contradicting the two eye-witnesses introduced by the Commonwealth, and was not to be considered as substantive evidence of the defendant's guilt.

The rule is that a party may contradict his own witness either (1) by other evidence, or (2) by showing that the witness has made statements different from his testimony. But in the latter case he may not be contradicted by showing inconsistent statements by him if he has only given merely negative evidence, or has failed to make for the party introducing him the statements apparently expected of him, but where he states facts distinctly prejudicial to the party introducing him, or clearly favorable to the adversary of such party, then the party introducing him may properly be permitted to show by other wit-

nesses that such witness introduced by him had made different or inconsistent statements. Champ v. Com., 2 Met. 17; Loving v. Com., 80 Ky. 507; Blackburn v. Com., 12 Bush 181; Garrison v. Com., 122 Ky. 882; Civil Code, sec. 596; Whitt v. Com., 27 Rep. 50.

It is apparent, therefore, that as the two eye-witnesses introduced by the Commonwealth gave evidence which was not wholly negative in its character but distinctly favorable to the defendant, the court properly permitted the Commonwealth to show by way of contradiction they had made, the day after the homicide, statements inconsistent with their testimony.

Complaint is likewise earnestly made of the trial court's refusal, upon objection to certain parts of his closing argument, to either reprimand the attorney for the Commonwealth or to direct the jury not to consider such statement. It appears that in the closing argument the representative of the Commonwealth said:

"Let me tell you how that fight occurred. At the time of this fight the defendant and Frank Wagers were on one side of the trouble, while Jesse Smith, Jake Wagers, John Wagers and Jim Wagers were on the other side, and when that fight started between the defendant and Jesse Smith, Jim Wagers had that 38 special pistol and he jerked that pistol and shot Frank Wagers in the back. Jesse Smith did not have that 38 pistol at all. Jim Wagers had it and shot his brother Frank, and they had to put that 38 special pistol in Jesse Smith's hand in order to say Jesse Smith shot Frank Wagers, and when the defendant started to run off Jake Wagers shot him through the arm with that 39 Winchester gun. This defense was just fixed up; I wouldn't say these attorneys did it, but it was done."

Manifestly this was not argument. It was merely a statement by the attorney of his own conception of what had occurred, and that statement finds no legitimate thing in the evidence as a basis for it. There is nothing in the evidence to show how the several parties present were aligned in their conduct or sympathies in the fight between Couch and Smith; there is nothing in the evidence to show any person present, other than the two principals, fired a shot, nor is there anything from which one may deduce the reasonable theory that the things

recited by the attorney for the Commonwealth actually occurred, or from which it may be fairly deduced they might have occurred.

The courts have no disposition to unduly restrict counsel in legitimate argument of cases; from the nature of things there must be certain latitude given to them, and while it is unnecessary to say in this case whether this would be sufficient ground alone for a reversal, on another trial the attorney for the Commonwealth in drawing his deductions should confine himself to legitimate inferences to be drawn from the testimony introduced and the physical facts in evidence.

We are constrained, however, to say that the whole evidence introduced by the Commonwealth, and by the defendant as well, shows that appellant in the shooting of Smith acted only in self-defense, and while there was no motion for a directed verdict, in the grounds for a new trial it is complained that the verdict is not sustained by sufficient evidence, and on this ground the court should have granted a new trial.

We have failed to find any evidence of a physical fact bearing upon the situation of the parties at the time that sufficiently contradicts the evidence of the eye-witnesses to authorize the submission of this case to the jury, and while we are convinced there is something connected with the case which has not been brought to light, we are unwilling to say that the evidence as it stands is sufficient to support a judgment of conviction.

Juries of course are the judges of the credibility of the witnesses, and may absolutely disregard the testimony of any or all of them. But when all the testimony given shows the defendant acted in self-defense, and in addition there is the presumption of innocence, then the jury, although it may not believe the witnesses, unless the physical facts furnish evidence to justify it, is not authorized arbitrarily to assume without evidence that the thing happened in some way different from that shown by the testimony.

The judgment is reversed with directions to grant the appellant a new trial, and for further proceedings consistent herewith.