# Harvey v. Commonwealth.

June 6, 1941.

Howard H. Whitehead and W. C. Hamilton for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The grand jury of Montgomery county returned an indictment against Chester Harvey charging him with the crime of storehouse breaking. The indictment also charged previous convictions of two felonies. By the verdict of the jury his punishment was fixed at confinement in the penitentiary for life, and from the judgment entered on that verdict he prosecutes this appeal.

In the first count of the indictment it was charged

that the accused on May 24, 1940, "did unlawfully, wilfully, maliciously and feloniously, and with force and arms, break and enter into the storehouse of the firm of Chenault and O'Rear in Mt. Sterling, Ky., with the felonious intent to take, steal and carry away therefrom articles and property of value against the will and without the consent of either or any owner thereof with the fraudulent intent to convert same to his own use and benefit and to permanently deprive the owners thereof of their property therein." Appellant contends on this appeal that there is no evidence tending to connect him with this crime, and that the trial court erred in overruling his motion to instruct the jury peremptorily to return a verdict of not guilty. A separate indictment was returned against Calvin Sexton charging him with the same offense.

The firm of Chenault & O'Rear conducted a hardware business in Mt. Sterling in a building which fronts on south Maysville street and extends back to a blind alley which intersects Locust street. The store was entered on a Sunday night from the rear through a glass door which opened onto the alley. The door was locked from the inside, and the key was left in the lock. The glass was broken, and evidently the person entering had reached through the opening and unlocked the door. On Monday morning the proprietors learned that the store had been entered, and, upon investigation, found that two shotguns, several knives, and a quantity of shotgun shells had been taken. Calvin Sexton was arrested and confessed. He took the officers to the place of concealment just outside the city limits, and the stolen merchandise was recovered. Soon thereafter appellant also was arrested and charged with the crime. On his trial the Commonwealth introduced as witnesses Mildred Shultz and Mrs. John Bohannon, both of whom were acquainted with Calvin Sexton and Chester Harvey. These witnesses worked at Moore's restaurant located on Locust street near the alley leading to the rear of the Chenault & O'Rear store. On the night the store was entered the restaurant closed at 8 or 8:30 o'clock, and Mildred Shultz and Mrs. Bohannon left and entered Mrs. Moore's automobile, which was parked on Locust street near the alley, and they remained there and talked for about an hour. They sat on the front seat, Mrs. Bohannon under the wheel and Mildred Shultz on her right. Both testified that while they were sitting in the

car they saw Calvin Sexton and Chester Harvey and spoke to them. Sexton and Harvey entered the alley leading to the rear of the Chenault & O'Rear store twice, and on the first occasion were out of view about 10 or 15 minutes. The witnesses did not see any merchandise in their possession when they returned to Locust street. Later they entered the alley again and after about 30 minutes returned. Mildred Shultz testified that on this occasion, "Chester was carrying something that looked like a piece of tin." On cross-examination she said he had "something shining. It looked like new tin." She was then asked if she saw anything that looked like a shotgun, and she answered: "I did not. That is not shiny." She also was asked these questions and made these answers:

"Q. Could you see any difference in their clothing from the time they went up and came back? A. Yes.

"Q. What was the difference? A. It looked like it was something bigger, like on the inside pocket they had something."

On direct examination Mrs. Bohannon testified as follows:

"Q. Did you see Chester Harvey and Sexton? A. I did.

"Q. Where did you see them? A. Going up the street and going up that alley.

"Q. What time of night? A. About half past eight.

"Q. How was you sitting in the car? A. I was setting under the wheel. Mildred Shultz was on the outside.

"Q. How long did they stay in the alley? A. They didn't stay very long the first time. They come back and went back.

"Q. How long did they stay the second time? A. About half an hour.

"Q. Did you see them the first time when they come out? A. I saw them when they come in and I saw them when they come out. They didn't have

anything when they went in and when they come out.

"Q. The second time? A. One had a gun and the other one I couldn't see anything.

"Q. Which one had a gun? A. Sexton had a gun.

"Q. What kind of a gun? A. It looked to be a shot gun.

"Q. What was their appearance when they come out as to what it was when they come in the alley? A. They looked to be heavier loaded.

"Q. Going in or coming out? A. Coming out their clothes fit different. Their clothes fit close and when they come out they stuck out.

"Q. What about their trousers? A. Their clothes stuck out more from them.

"Q. More going in or coming out? A. Coming out.

"Q. Did you receive information concerning the storehouse breaking of Chenault and O'Rear? A. The next morning.

"Q. With relation to the time you saw these people go in the alley, when was it you learned the place had been broken in? A. The next morning.

"Q. What day of the week was it that you saw them? A. Sunday night."

On cross-examination she insisted that she saw a shotgun, but stated that it was in the possession of appellant, whereas on direct examination she had stated that it was in the possession of Sexton.

The Commonwealth introduced Calvin Sexton as a witness, and he testified that he broke into the store about 9 o'clock on Sunday night; that he cut the glass out of the door, went in and got two shotguns and some pocket knives and shells. He denied seeing Mildred Shultz or Mrs. Bohannon, and stated that Chester Harvey was not with him. He was then asked if he talked with the Commonwealth's attorney on the day of the trial and had stated to him that Chester Harvey was present when the store was entered, and the witness an-

swered: "I didn't make you no answer." He admitted that he had testified under oath at a former term of court in the case against Harvey, and stated in that trial that he and Chester Harvey broke into the store, and that he had made the same statement in a writing signed by him.

It is appellant's contention that he was entitled to a peremptory instruction on two grounds: (1) The evidence tending to connect him with the crime of breaking into the Chenault & O'Rear store was insufficient to take the case to the jury; and (2) the Commonwealth is bound by the statement of its own witness, Calvin Sexton, that appellant was not present when the store was entered.

Appellant bases his argument that the evidence was insufficient upon the theory that the contradictions in Mrs. Bohannon's testimony destroy its probative value. It is argued that her testimony shows she is unworthy of belief, and that it should be disregarded. We have read her testimony carefully and find no material contradictions. The one particularly stressed by appellant involves the identity of the person having possession of the shotgun when, according to the testimony of Mildred Shultz and Mrs. Bohannon, appellant and Sexton came out of the alley. On direct examination she said that Sexton had the shotgun, and on cross-examination she said that appellant had it. She was positive that she saw appellant and Sexton enter the alley together and, after about 30 minutes, they came out with articles in their possession evidently obtained during the interval. Identity of the possessor was an immaterial fact so long as one of them had possession of the stolen property, and uncertainty on this point was not an unusual item of experience. But be that as it may, as this court has so often pointed out, the credibility of the witness under the circumstances was solely a question for the jury. Even with the testimony of Mrs. Bohannon eliminated, the evidence was amply sufficient to take the case to the jury and to sustain the verdict. The testimony of Mildred Shultz placed appellant with the accomplice at the place of the crime at, or about, the time it was committed. If her testimony is true, and she was not impeached, there can be no doubt of appellant's guilt.

Appellant's contention that the Commonwealth is bound by the statement of its own witness Sexton that appellant was not present when the store was entered

cannot be sustained. We know of no rule prohibiting a litigant who has been surprised by unfavorable testimony given by his own witness from introducing witnesses to prove a fact denied to exist by the first witness, and none has been pointed out.

> "A party, by introducing a witness who gives evidence against him, is not concluded by such evidence. He may call other witnesses to prove that the facts are otherwise than as stated."

Southern Railway Company v. Goddard, 121 Ky. 567, 89 S. W. 675, 677, 28 Ky. Law Rep. 523, 12 Ann. Cas. 116. Appellant's principal contention seems to be that the Commonwealth could not contradict its witness Sexton either by other evidence or by showing that he had made other statements different from his testimony.

Section 596 of the Civil Code of Practice reads:

> "The party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him; but he may contradict him by other evidence, and by showing that he has made statements different from his present testimony."

This section applies in criminal cases. Champ v. Commonwealth, 2 Metc. 17, 74 Am. Dec. 388; Bynum v. Commonwealth, 248 Ky. 564, 59 S. W. (2d) 550. In construing this section of the Code and in defining the exception to the general rule against the impeachment of one's own witness, this court has held that before he may be contradicted by proof of his prior statements, the testimony given by the witness must be prejudicial to the party calling him, and it is not enough that he disappoints the expectations of such party by failing to give beneficial testimony. Connecticut Fire Ins. Company v. Moore, 154 Ky. 18, 156 S. W. 867, Ann. Cas. 1914B, 1106. The rule consistently followed by this court is stated thus in Couch v. Commonwealth, 202 Ky. 677, 261 S. W. 7, 9:

> "The rule is that a party may contradict his own witness either (1) by other evidence, or (2) by showing that the witness has made statements different from his testimony. But in the latter case he may not be contradicted by showing inconsistent statements by him if he has only given merely nega-

tive evidence, or has failed to make for the party introducing him the statements apparently expected of him, but, where he states facts distinctly prejudicial to the party introducing him, or clearly favorable to the adversary of such party, then the party introducing him may properly be permitted to show by other witnesses that such witness introduced by him had made different or inconsistent statements.''

In 28 R. C. L. page 643, it is said:

''It is well settled that although a party may not impeach his own witness directly, he may show that the statements made by him are not in fact true, and thus incidentally discredit him. This is true not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief. This is one of the exceptions to the general rule that a party cannot impeach his own witness. Indeed were a party forbidden to contradict his own witnesses, everyone would be at the mercy of his own witnesses, and if the first witness sworn should swear against him he would lose the testimony of all the rest, which would be a perversion of justice.''

The statement of the witness Sexton that appellant was not present when the store was entered was prejudicial to the Commonwealth and beneficial to appellant, and it was competent for the Commonwealth to contradict the witness either by other evidence or by showing that the witness had made statements different from his testimony. Couch v. Commonwealth, supra; Rutland v. Commonwealth, 160 Ky. 77, 169 S. W. 584; Johnson v. Commonwealth, 227 Ky. 153, 12 S. W. (2d) 308; Buck v. Kleinschmidt, 279 Ky. 569, 131 S. W. (2d) 714; Harlan Public Service Company v. Eastern Construction Company, 254 Ky. 135, 71 S. W. (2d) 24. Neither the writing theretofore signed by the witness nor his testimony on a former trial was read to the jury, but the witness was asked if he had theretofore stated that appellant was with him when the store was entered, and he answered in the affirmative. Under the foregoing authorities, it was competent for the Commonwealth to inquire concerning previous statements made by him contradictory of his testimony.

It is suggested that the court erred in failing to admonish the jury that this evidence could be considered only for the purpose of effecting Sexton's credibility as a witness. But, conceding for present purposes that such an admonition would have been proper, no request for an admonition was made and appellant must be deemed to have waived his right to it. Hedrick v. Commonwealth, 267 Ky. 481, 103 S. W. (2d) 111; Clair v. Commonwealth, 267 Ky. 363, 102 S. W. (2d) 367.

We find no error prejudicial to appellant's substantial rights, and the judgment is affirmed.