## Maddox v. Commonwealth.

December 9, 1949.

Morrison Fordyce for appellant.

Wm. J. Wise, A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

STANLEY, COMMISSIONER—Reversing.

On the morning of March 5, 1946, Louis Monkedick, a 76 year old night watchman at Heringer's saloon and cafe in Newport, was found badly beaten up. He died a few days later without regaining consciousness. The place had been burglarized and the conditions indicated a struggle had taken place. Two years later Robert Maddox and William NeCamp were indicted for the murder and were separately tried. Both were convicted and the death penalty adjudged in each case. See Ne-Camp v. Commonwealth, 311 Ky. 676, 225 S. W. 2d 109.

Some of the grounds upon which the appellant, Maddox, bases his appeal appear only in his brief and have no foundation whatever in the record. Others have so little merit that they need not be discussed. A brief summary of the evidence will show that the appellant's claim that the proof of his guilt was not sufficient to submit the case to the jury or to sustain the verdict is likewise without merit.

William Stephenson and Frank Champlin both testified they were with Maddox and NeCamp on the night the crime was committed. They were drunk and drowsing or asleep in the rear seat of an automobile. The car stopped at a point which we understand is near the scene of the crime, and Maddox and NeCamp got out. After a little while they returned in a great hurry. Maddox had a bleeding cut on his forehead. Champlin stated that he was not very clear about it but thought he asked what had happened, and Maddox said he had had a fight in a barroom. The four men proceeded to

the home of George Fenton in Dayton. The occurrences there were related by Stephenson, Champlin, and Fenton. It was along about half past two in the morning. Maddox' head and shirt were bloody, and he washed up and changed clothing. Fenton testified Maddox said he had been hit in the head at Heringer's saloon, adding, "I think he said he was burglarizing it." The men had two or three pistols and a blackjack. They emptied their pockets in a hat. They had some currency and change which was wrapped. About $50 or $60 in currency and some wrapped coins had been stolen from Heringer's saloon that night. The blackjack was broken or "busted" and NeCamp, examining it, said something like, "You hit the old man pretty hard." Maddox replied that the old man had hit him with a bottle. There were one or more broken beer bottles at the scene the next morning. While NeCamp was playing with one of the pistols it was accidently discharged, and Champlin was slightly wounded.

Fenton further testified that a week or so before this, while standing in front of Heringer's saloon, Maddox had suggested that they rob the place, and he had told him he should have better sense than to do that because of the old night watchman. Three or four weeks after the crime, Maddox and NeCamp returned to his house. They said they had been in Florida and asked what had happened to the old man, and when Fenton told them he had died, one of the men said he was sorry.

Stephenson admitted to a conviction of a felony ("breaking and entering into a filling station") in 1942. Champlin had been convicted on a similar felony in 1939. Fenton, at the time of this trial, was living in the federal penitentiary. He had also resided at different times in the Ohio and the Kansas penitentiaries.

When arrested in February, 1948, Maddox had a scar at the left hairline of his forehead. Several officers testified that at the time he had responded to their questions, "I have nothing to say." Later on, when confronted with statements of Stephenson, Champlin and Fenton, Maddox said, "You probably have got enough on me to burn me, but I will take my chances with the jury."

No evidence was introduced by the defendant.

We must reverse the judgment because of a serious error in the examination and contradiction of the witness, Henrietta Carter, the former wife of George Fenton. She testified she was sick in bed the night Maddox and the other men had come to her then home and that Maddox was hurt; also they had returned two or three weeks later. She was very reluctant and evasive upon further examination. Her responses generally were, "I don't know," "I couldn't say what he was doing," or "I imagine so." The Commonwealth's attorney then proceeded as the witness would evade his answers to ask if when he had interviewed her on April 8, 1948, a short while before the trial, she had not said this and that. Typical of this interrogation is the following: "I will ask you if you didn't tell me this at that time: That Maddox and NeCamp were there with two other fellows, and 'I heard George say I told you not to do it;' that he had a watchman down there. Rusty (Maddox) said, 'the son-of-a-bitch hit me on the head.' " After a colloquy between the court and the lawyers, the judge asked the witness, "Is that statement true?" She answered, "If he says it, I guess I said it. I get so nervous I don't know what I am saying." In response to a similar interrogation as to what she had told the lawyer at his interview she would answer, "I don't remember" or "I never seen it." The court admonished the jury that the evidence might be considered for the purpose of affecting the credibility of the witness, Mrs. Carter, if the jury believed it did so. The Commonwealth's attorney took the witness stand and in narrative form told of his interview with Mrs. Carter on April 18, 1948, and related a number of statements which she had made to him then. Some of these statements were not contradictory. Some of his testimony contained statements about which the witness had not been asked. The attorney further stated in the hearing of the jury, "I think this might be pertinent. Mrs. Carter told me on that occasion, and later on the telephone, that she definitely under no circumstances would appear as a witness in this case. Consequently I didn't serve her with a subpoena before I found out that a request was made for her to bring this boy, who is George Fenton's boy, to the Court House to see George Fenton; and I arranged for a subpoena to be issued and served on her just now when she came into the Court

House. Even then she refused to come in and testify, and I was obliged to force her by telling her she had to come in. For that reason, the witness was a hostile witness." The court sustained an objection to the statement concerning the hostility of the witness, adding, "No hostility was manifested to the court." He admonished the jury not to consider that statement, but that it could consider the other testimony of Mr. Wise as it related to the statements "allegedly made by the witness, Mrs. Carter, to Mr. Wise on the 8th day of April, 1948, at the home of Mrs. Carter in Dayton, Kentucky."

This interrogation and testimony of the Commonwealth's attorney was admitted under the provision of Section 596, Civil Code of Practice, which permits a party introducing a witness to contradict him "by showing that he has made statements different from his present testimony." It seems to us it is not within the terms of that provision. Its purpose is to protect a party against a witness who, to his surprise, gives testimony distinctly prejudicial to him or clearly favorable to his adversary. A party may not introduce such testimony by way of contradiction when it does not contradict a surprising prejudicial statement. If the testimony is merely negative or the witness fails to make the statements which the party introducing him apparently expected, he will not be permitted to get before the jury the anticipated evidence by this secondhand method. This construction of the code provision and the policy of procedural law was logically laid down in the early case of Champ v. Commonwealth, 2 Metc. 17, 59 Ky. 17, 74 Am. Dec. 388. It has been consistently followed and applied. Commonwealth v. Bavarian Brewing Co., 80 S. W. 772, 26 Ky. Law Rep. 121; Helton v. Commonwealth, 202 Ky. 516, 260 S. W. 345; Couch v. Commonwealth, 202 Ky. 677, 261 S. W. 7; Coleman v. Commonwealth, 241 Ky. 8, 43 S. W. 2d 185; Harvey v. Commonwealth, 287 Ky. 92, 152 S. W. 2d 282.

The testimony of Mrs. Carter did not afford a basis for contradiction. She did not testify adversely to the Commonwealth. In the main, she simply claimed she did not know anything that occurred on the occasion about which she was asked. We agree with the trial court that she manifested no hostility. But she

was clearly evasive. While doubtless all this came as a disappointment and perhaps a surprise, there was no adverse or prejudicial testimony. It was negative.

We have read this record and its disclosures with an appreciation of the diligence and ability of the officers in the detection and prosecution of the case. But we feel that in his zeal the Commonwealth's attorney went beyond the bounds of propriety and of competent evidence and that the court committed an error in admitting it. It is true that the statements were cumulative of the testimony of the three men. But they were all impeached by admission of being felons. Moreover, this is a matter of life or death, and the court will not speculate that the error was not prejudicial. We are constrained, therefore, to reverse the judgment on this account, and none other.

Judgment reversed.