## CLICK v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 23, 1954.

Robert S. Wellman, Prestonsburg, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Upon trial under an indictment for murder, Ray Click was found guilty of voluntary manslaughter and sentenced to 10 years in the penitentiary. He appeals, maintaining that the evidence was not sufficient to sustain a conviction and that the court erred in the admission of certain evidence.

The victim was Otis Blankenship. He, together with Ray Click, Lloyd Click and Everett Stone, began a drinking, singing and dancing party in a small two-room house owned by Ray Click, in Floyd County, around 7:00 p. m. on August 29, 1953. Around 10:00 p. m. the light in the front room went out, and a rifle shot was heard. A bullet passed through the abdomen of Lloyd Click and entered the head of Otis, who later died without regaining consciousness. After the shot was fired, Lloyd Click and Everett Stone immediately departed from the premises by the front door. Otis Blankenship's wife, who had been at a nearby house, ran to the Ray Click house with a flashlight, and found Otis lying on the floor of the front room. Ray Click was standing in the room, with the light still out. Mrs. Blankenship exclaimed that Otis had been killed, whereupon Ray said, in effect, that it was not Otis, but Lloyd, who had been shot. The light was then turned on, and other neighbors arrived. One of these neighbors found Ray Click's .22 rifle lying across the bed in the back room, with several shells beside it. Ray left the place and went to the home of his mother where he fell asleep and was later that night awakened and arrested by some deputies of the sheriff. The deputies said that when they arrested him he was drunk and talked incoherently. He said at first that the men who were shot had been wrestling over the gun, but immediately changed his story and said that he was asleep at the time and didn't know what had happened.

It appeared from the testimony of Lloyd Click and Everett Stone that immediately before the light went out and the shot was fired, Everett Stone was sitting on a chair in one front corner of the room, and Otis Blankenship was seated in the other front corner. Ray Click was standing behind a table in the back of the room, directly in front of and perhaps partly in the doorway to the back room, and Lloyd Click was standing in front of the table, in a line between Ray and Otis. No one could say whether the light went out accidentally or was turned off by someone in the room, although one of the men said that Ray had turned the light off one time earlier in the evening. It is not questioned that the bullet which wounded Lloyd and killed Otis came from Ray Click's rifle.

Upon the trial, Lloyd Click and Everett Stone had no recollection of seeing the rifle in the room at any time, and refused to say either that the rifle was or must have been fired by Ray Click. We will have more to say about their testimony at a later point in this opinion.

Ray Click testified that during the evening the rifle had been standing in a back corner of the room, with its butt resting upon a small shelf behind a stove, and with its barrel leaning against a nail in the wall above the shelf. He said that after the shot was heard he discovered the gun lying across the top of the stove, and he stated his belief that the gun fell from its resting place across the stove and was accidentally discharged. He further said that when he went into the back room to get some towels to wipe the blood from Otis' head he picked up the rifle and tossed it onto the bed, all this taking place before the light was turned back on.

It is our opinion that the evidence was sufficient to establish that a criminal act had been committed and that Ray Click was the person who committed it. Although the evidence was wholly circumstantial, the inferences lead unerringly to the conclusion that Ray Click turned out the light and fired the shot. It is true that no witness said the gun was in Ray's hands, but the situation before the shooting, and the course of the bullet, establish beyond any doubt that if the gun was fired deliberately Ray was the one who did it. The conduct of Ray after the shooting, the conflicting stories told by him to the arresting officers,

the fact that the other men did not see the rifle resting in the corner earlier in the evening, and the fact that shells were found beside the gun on the bed in the back room, all tend to disprove Ray's theory that the gun fell accidentally from its resting place. Also, there was evidence that the shelf on which Ray said the butt of the gun was resting was below the level of the top of the stove, so that the gun could not have fallen across the top of the stove.

Although we believe that the evidence was sufficient to sustain the conviction, it is our opinion that prejudicial error was committed in the admission of certain evidence supposedly offered for the purpose of impeaching the witness Lloyd Click.

Before offering Lloyd Click as a witness, the Commonwealth's attorney stated to the court:

> " * * * it is imperative that we introduce the witness Lloyd James Click, who is a nephew of the defendant, Ray Click, and we assume he will be a hostile witness, and desire permission of the Court to cross-examine him, and also to impeach his testimony by showing he made statements contrary to his present testimony."

The request of the Commonwealth's attorney was granted, over objection of the defendant. Upon being questioned as to the events at the time of the shooting, Lloyd Click would not say that Ray shot him, and he claimed to have no idea who fired the shot. He also said that he had made no effort to find out who shot him. The Commonwealth's attorney then asked him whether he had not stated, in the presence of various named persons, that Ray shot him. Lloyd denied having made the statements. The Commonwealth's attorney subsequently introduced seven witnesses who testified that Lloyd had said in their presence that Ray had shot him. The court admonished the jury, as to each of these witnesses, that their testimony was to be considered only for the purpose of impeaching Lloyd Click.

We think it is perfectly obvious that the real objective of the Commonwealth's attorney, and the real purpose of the seven "impeaching" witnesses, was not to impeach Lloyd Click, but to prove by indirection that Ray Click had fired the fatal shot. The purpose was to put into Lloyd's mouth words Lloyd was unwilling to use on the trial, which would have the effect of establishing Ray's guilt.

In Maddox v. Commonwealth, 311 Ky. 685, 225 S.W.2d 107, 108, after receiving a number of " 'I don't know' " answers from an evasive witness, the Commonwealth's attorney questioned her about some positive statements she allegedly had made to him before the trial, and he later took the stand himself and testified that she had made such positive statements. In holding this to be prejudicial error, the Court said:

> "If the testimony is merely negative or the witness fails to make the statements which the party introducing him apparently expected, he will not be permitted to get before the jury the anticipated evidence by this secondhand method."

█ The rule is stated generally to be that a party may impeach his own witness, by proof of contradictory statements, only where the witness testifies positively to the existence of a fact prejudicial to the party, and not where the witness merely fails or refuses to testify as to the existence of a fact that would be favorable to the party. Harvey v. Commonwealth, 287 Ky. 92, 152 S.W.2d 282; Couch v. Commonwealth, 202 Ky. 677, 261 S.W. 7; Johnson v. Commonwealth, 227 Ky. 153, 12 S.W.2d 308; Champ v. Commonwealth, 2 Metc. 17, 59 Ky. 17, 74 Am.Dec. 388.

█ We have no doubt as to the prejudicial effect of the seven witnesses repeating and emphasizing the fact that Lloyd had said that Ray fired the shot. We think the admission of this evidence deprived Ray of a fair trial.

█ Some complaint is made of the conduct of the Commonwealth's attorney in questioning Everett Stone concerning contradictory statements made by him in his

testimony before the grand jury. While a considerable amount of this questioning was with regard to unessential details, and therefore not prejudicial, some of it related to positive statements alleged to have been made by Everett before the trial concerning facts as to which he professed a lack of knowledge on the trial. This was improper for the same reason that the attempted impeachment of Lloyd Click was improper, and upon another trial the court will not permit such line of questioning.

The judgment is reversed, with directions to grant a new trial.